## TOWN OF ANSONIA *vs.* ALFRED COOPER ET AL.

Third Judicial District, Bridgeport, April Term, 1895. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

*A,* having a life interest in certain land, the fee in which belonged to her
sons *B*, *C*, *D*, and *E*, sold it by a warranty deed, which purported and
was intended to convey the fee. The vendee took immediate possession
of the land, and he and his grantees have ever since retained it. *A*
retained most of the purchase money until her death. After her death
*B*, *C*, and *D*, with knowledge of all the facts, agreed to pay her debts,
and divide the remainder among themselves, including their brother *E*.
*E's* share was paid him according to this agreement. A year later *E*
learned all the facts, and complained because the price obtained by *A*
had been too small, but did not otherwise object to the agreement
made by his brothers. He never repaid the money he had received,
nor demanded possession of the land. When asked by the party in
possession for a quitclaim deed, he offered to give it, if compensated
for the claimed inadequacy of the price. Six years later the land was
taken by process of eminent domain. *Held* that *E* had ratified the
sale made by *A*, and could not claim any interest in the land, nor in
the compensation awarded for it. Whether the finding by the trial
court that *E* had ratified the sale was not a finding of fact, not review-
able by this court, *quære.*
Where depositions have been regularly taken by one party to a cause, and
filed with the clerk, if the party taking them does not put them in evi-
dence, the adverse party may do so.
Where the adverse party was permitted to read and put in evidence such
parts of the depositions as he chose, but the court informed the appel-
lant that she might read and introduce, as part of her opponent's case
and not of her own, such other parts of the depositions as she deemed
relevant and material, it was *held* that this ruling, if erroneous, did the
appellant no harm.

[Argued April 16th—decided May 28th, 1895.]

ACTION in the nature of interpleader, brought to the
Superior Court in New Haven County and tried to the court,
*George W. Wheeler, J. ;* facts found and judgment rendered
in favor of Henry G. Alling, and appeal by Elizabeth Downs
for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

Ansonia *v.* Cooper et al.

*George P. Carroll*, for the appellant, Elizabeth Downs.

I. There was no ratification by reason of Alfred Cooper's " conversation " with Charles Cooper in 1885 ; nor by his " conduct and silence from 1884 to the present time." Ratification is not a mere mental state or condition. And where there is no consideration, or the consideration is past or executed, there can be no binding ratification. Ratification contains all the elements of an enforceable promise, express or implied, or of an estoppel, which is correlated to enforceable promises in its elements. *Hamlin* v. *Sears*, 82 N. Y. 327 ; *Wakeman* v. *Wright*, 33 Ohio St., 405 ; *McHugh* v. *County of Schuylkill*, 67 Pa. St., 391 ; *Corser* v. *Paul*, 41 N. H., 24 ; *Casco Bank* v. *Keene*, 53 Me., 103 ; *Crout* v. *De Wolf*, 1 R. I., 393 ; *Charles River Bank* v. *Davis*, 100 Mass., 413 ; *Hammerslough* v. *Chatham*, 84 Mo., 13 ; *Owsley* v. *Phillips*, 78 Ky., 517 ; *Living* v. *Wiler*, 32 Ill., 387 ; *Fogel* v. *Schmalz*, 92 Cal., 412 ; *Brook* v. *Hook*, L. R., 6 Ex., 89 ; *McKenzie* v. *British Linen Co.*, L. R., 6 App. Cas., 82. Even the idea that there can be a ratification of the act of a self-assuming agent, without a valid present or executory consideration, has no foundation either in principle or authority. It is not true that a ratification relates back and is equivalent to a previous request, unless it also appears that the ratification has binding force at the very time it is made. *Bird* v. *Brown*, 14 Jurist, 132 ; *Doe* v. *Goldwin*, 2 Q. B., 143 ; *Right* v. *Cuthell*, 5 East, 491. To hold that inaction and silence constitutes ratification is arbitrarily to lessen the period of adverse possession required by the statute of limitation. *Doughbody* v. *Crowell*, 11 N. J. Eq., 201 ; Mechem on Agency, § 131. There was no ratification by reason of anything said or done by Alfred Cooper in his correspondence with the appellee or his attorney. For the appellee did not alter his position in consequence of such correspondence. *Starkweather* v. *Goodman*, 48 Conn., 101. Of course if a quitclaim deed had been given, that *ipso facto* would have settled matters ; or if any promise had been made on a valid consideration and accepted by the appellee.

II. That the judgment should be sustained on the princi-

ples of ratification is a legal impossibility. Elizabeth Cooper in giving the deed did not profess to act as agent for her son Alfred. The appellant's allegation to that effect is not denied. "Where the party making the contract has no authority to contract for the third person, and did not profess, at the time, to act for him, the subsequent assent of such third party to be bound as principal, has no operation. A ratification is only effectual when the act is done by a person professedly acting as the agent of the party sought to be charged as principal." 1 Amer. & Eng. Ency. of Law, 431; *Garvey* v. *Jarvis*, 46 N. Y., 310; *Wilson* v. *Tumman*, 6 Man. & G., 236; *Meiness* v. *Munson*, 53 Ind., 1, 10; *Pittsburg, etc. R. Co.* v. *Gazzam*, 32 Pa. St., 340; *Fellows* v. *Commissioners*, 36 Barb., 665; *Farmers' Loan and Trust Co.* v. *Walworth*, 1 N. Y., 444; *Hammerslough* v. *Chatham*, 84 Mo., 13; Mechem on Agency, § 127.

III. The court erred in its ruling respecting the depositions. Weeks on Depositions, § 465; *Sexton* v. *Brock*, 15 Ark., 345; *McFarlane* v. *Hunter*, 8 Leigh, 489; *Vaughn* v. *Garland*, 11 id., 251; *Logan* v. *McGinnis*, 12 Pa., 27; *Anderson* v. *The State*, 89 Ala., 12; *S. A. & A. P. Ry. Co.* v. *Harrison*, 72 Tex., 478; *Ford* v. *Ford*, 17 Pick., 422.

*V. Munger*, for the appellee, Henry G. Alling.

I. The finding of the trial court that Alfred Cooper had ratified the sale was one of fact, and not reviewable by this court. Mechem on Agency, § 135. But assuming that the question is still open, then I submit that upon the facts as found the judgment was clearly warranted by the opinion of this court when this case was before it on a former occasion. *Ansonia* v. *Cooper*, 64 Conn., 536.

In *Spragg* v. *Shriever*, 25 Pa. St., 282, it is said: "It is fully settled upon principle and authority that where a sale is made for the benefit of any one, the receipt of the proceeds by such person validates it." See, also, same point, *Maple* v. *Cussart*, 53 Pa. St., 349; *Cox* v. *Rogers*, 75 id., 160; *Woodstock Iron Mine* v. *Fullenwinder*, 87 Ala., 584, 13 Am. St. Rep., 73.

Ansonia v. Cooper et al.

II. In addition to the facts appearing on the former trial, it is now found that in 1885 Alfred Cooper declared to his brothers that the title of the purchaser was bad, and that they could make him trouble.

Can the owner of property stand by and see another person buy and pay for it in the belief that he is getting a good title? On the contrary the law as well as sound morals compels him to speak. *Anderson* v. *Hubbell*, 93 Ind., 570 ; *Griggs* v. *Von Phul*, 1 Wall. 274 ; *Morgan* v. *Chicago & Alton R. R. Co.*, 96 U. S. 716 ; *Continental National Bank* v. *Bank of Commonwealth*, 50 N. Y., 575 ; *Winton* v. *Hart*, 39 Conn., 20 ; 2 Pom. Eq. Juris., § 818 ; *Storrs* v. *Barker*, 6 Johns. Ch., 166 ; *Rice* v. *Bunce, Adm.*, 49 Mo., 231, 8 Am. Rep., 129 ; *Workman* v. *Guthrie*, 29 Pa. St., 654, 72 Am. Dec., 654.

III. The court committed no error in respect to the depositions. " The deposition taken at the instance of a party to an action, and not used by him, may be read in evidence by the opposite party against the objection of the party at whose instance it was taken." 5 Amer. & Eng. Ency. of Law, 607, and cases cited in note 2 ; *Calhoun* v. *Hays*, 8 W. & S., 127, 42 Am. Dec., 275 ; *Linfield* v. *Old Colony R. R. Co.*, 10 Cush., 562, 57 Am. Dec., 124.

TORRANCE, J. This is a proceeding in the nature of a bill of interpleader between Henry G. Alling and Elizabeth Downs, to determine which of them is entitled to a fund paid into court by the town of Ansonia, as the appraised value of land taken by said town for a school-house site.

The land was formerly owned by Charles Cooper, who died in 1876, leaving a will which gave the use of the land to his widow for life, and the remainder in fee equally to his four sons, Charles, Alfred, William and Henry. In July, 1880, the widow sold the land for twenty-five hundred dollars, and gave a warranty deed of it in the usual form, which purported and was intended to convey the fee. The widow died in March, 1884. In 1886 the land came, through mesne conveyances by warranty deed, to Henry G. Alling, one of the claimants of the fund, who then paid to his grant-

or thirty-five hundred dollars for it. Alfred Cooper has never conveyed his interest in the land, and the fund in question is the appraised value of that interest.

The town began proceedings to take the land in September, 1891, and in November, 1891, Alfred Cooper assigned all his right, title and interest in and to the fund in question, to Elizabeth Downs, of which assignment the town had due notice.

In one phase of it this case has already been before this court. *Ansonia* v. *Cooper*, 64 Conn., 536. In that case Alling set up certain facts showing, as he claimed, that Alfred Cooper had ratified the sale and conveyance made by his mother; Elizabeth Downs demurred to the facts so set up, the Superior Court sustained the demurrer, this court on appeal reversed that judgment, and the case stood again for trial in the Superior Court. Thereupon Elizabeth Downs denied the facts upon which the claim of ratification was founded.

The Superior Court found that Alfred Cooper had ratified said sale, and that Alling was entitled to the fund; and from that judgment Elizabeth Downs brings the present appeal. The errors assigned are thirty in number, but it will be unnecessary to consider all of them separately and in detail.

The court below has found that Alfred Cooper ratified the sale; if that conclusion is warranted by the facts found, and no harmful error intervened in the process of reaching it, then the judgment appealed from must stand.

Upon the argument before this court, Alling claimed that the conclusion reached upon the question of ratification was one of fact, which could not be reviewed upon appeal; but whatever doubts upon this question may be suggested by the record, we will, for the purposes of the case, consider that conclusion as one which can be reviewed on this appeal.

We will first consider whether the facts found warrant the conclusion that Alfred Cooper ratified the sale. These facts are set out in detail upon the record, and the following appear to be, in substance, the controlling ones:—

The sale and conveyance was made with the approval and by the advice of her son Henry, but without the knowledge of the other three sons; the purchase price then paid was twenty-five hundred dollars; the court finds that the land was then worth thirty-five hundred dollars, but it does not appear that the parties at that time considered it worth any more than the price paid; the conveyance was made freely and without the use of any undue influence; her grantee took immediate possession under the deed, and in 1881 sold and conveyed the land by warranty deed to Charles D. Alling; he, in 1886, sold it to Henry G. Alling for $3,500 and conveyed it by warranty deed; these deeds were duly recorded, and the grantees named therein took and held the possession of said land under said deeds in good faith as owners, from 1880 down to the time the land was taken by the town; all the four sons knew of this conveyance by the widow before her death; at her death she left in cash about $2,200, " the same being in whole or greater part from the proceeds of said sale "; shortly after her death three of the sons, Charles, William and Henry, with full knowledge of all the facts, agreed to divide the balance of their mother's estate, after paying her debts and funeral expenses, and appointed Henry to carry the agreement into effect; he paid the debts and funeral expenses and divided the remainder among the four sons; Alfred's share was $394, and it was paid over to him in 1884; he knew when he received it that it was from moneys in the hands of his mother at her decease; about a year after his mother's death Alfred was fully informed by Charles and William of all the facts in the case, and of the agreement aforesaid of the three brothers, and of the share of each son and of the fact that the share paid over to him came in whole or in part from the proceeds of the sale made by his mother; he then objected to the smallness of the balance divided among the sons, and thought the land ought to have brought more, and said if it had sold for $1,000 more, he would have been satisfied; he also then said that the land ought not to have been sold without the consent of the sons, that the purchaser had a shaky title, and that they

could make him trouble if they wanted to; but he neither at this nor at any subsequent time made any complaint "in regard to the agreement aforesaid of the three brothers, or to the manner in which it had been carried out"; neither he nor his brothers ever demanded possession of said land, nor did he or they ever repudiate the sale made by their mother, or make any demand upon Henry G. Alling or his predecessors in title; except that in 1891, when Alfred Cooper was requested to quitclaim his interest in said land, "he did not repudiate said sale, but subsequently demanded of the purchaser, and desired, only such sum as represented his share of the difference between the purchase price and the real value as claimed by him at the time of the sale"; had Alfred received from Henry G. Alling $250, he intended to give him a quitclaim deed as requested.

It clearly appears from the record that, probably in the fall of 1884, and certainly in 1885, Alfred Cooper had full knowledge of all the material facts pertaining to the sale of his land, and the disposition of the proceeds of that sale, and the settlement of his mother's estate. He then knew that she had sold the fee for $2,500 and had received the money; that she and her grantees in good faith supposed the deed conveyed the fee and had ever thereafter dealt with the land on that supposition; that substantially the whole of that purchase money had remained at his mother's decease; that his three brothers had agreed to divide that money among her creditors and her four sons and settle her estate out of court; and he also knew that this had been done, and that he had received his share of this purchase money. With this full knowledge of all the material facts, and of his rights with respect to the land sold by his mother, he does substantially what his three brothers had done; he assents to what they had done in the settlement of his mother's estate, and the division of the purchase money, and he retains and proposes to retain his share of that money. It is true his assent to what had been done is a grumbling one, accompanied with expressions of dissatisfaction at the outcome and result; but his dissatisfaction is not really because his mother

had sold the fee, but rather because she did not get enough for it, and because the amount finally divided between the sons was so small. He did not then and never has repudiated the sale, he has never made demand for the land, and he has never offered to give up the money he received from his mother's estate.

Upon the facts found Alfred Cooper had the right, when he became fully informed of all the material facts, either to repudiate this sale of his land, or to adopt it and take the benefit of it; and when so informed, he was bound to do one or the other and could not do both. In 1884, or in 1885, he had full knowledge of all the facts; he knew that his mother had sold his land and received the money for it; he knew that under the agreement made by his brothers, his share of that money had been paid to him; and with full knowledge of all the facts he decided to keep the money. We think there can be but one conclusion drawn from his conduct, and that is that he elected to take the benefit of the sale and intended to ratify it. Suppose she had told him in 1883 what she had done, and that his three brothers had approved of her act and taken their share of the purchase money; and suppose he had told her that she ought not to have sold the land for the price received, or without his consent, but had nevertheless taken his share of the purchase money and retained and proposed to retain it; could he afterwards, under such circumstances, successfully assert his title to the land in a court of equity? We think not. But the actual case does not materially differ from the one supposed, so far as this question of ratification is concerned. The essential thing in both consists in taking and retaining with full knowledge, the benefit of his mother's act. "Ratification means the adoption by a person, as binding upon himself, of an act done in such relations that he may claim it as done for his benefit, although done under such circumstances as would not bind him except for his subsequent assent. * * * The acceptance of the results of an act with an intent to ratify, and with full knowledge of all the material circumstances, is a ratification." *Ansonia* v. *Cooper*, 64 Conn., 536.

Indeed the case last cited is decisive upon the point in question. So far as they bear on this matter of ratification, the facts admitted in that case do not essentially differ from the facts found in this. In both the essential fact is that Alfred Cooper, with full knowledge of his rights and of all the material facts, takes and decides to keep his share of the purchase money. If the facts admitted in the former case amounted, as was held, to a ratification, the facts here found must equally be so considered. We think the facts found warrant the conclusion that Alfred Cooper ratified the sale.

This disposes of the principal question in the case, and we will now consider the more important of the other errors assigned, which relate in a general way to the overruling of certain claims made by the appellant, and to rulings upon questions of evidence.

Most of the claims which it is alleged the court overruled, were simply propositions of law more or less correctly stated, setting forth the legal elements of a valid ratification. It does not appear that the court expressly overruled any of these claims, and as to very many of them we cannot see that it did so by implication; we shall, therefore, only consider briefly one or two of them which, it may be fairly claimed, the court in finding as it did, must have overruled.

The first is this: that there was a material variance between Alling's allegations and proof, and therefore he could not recover. The claimed variance between allegation and evidence is not pointed out, nor indicated in any manner upon the record, and we have no means of determining whether such variance exists, or whether it is a material one. In addition to this it is impossible to see, from the record, how the overruling of this claim can have harmed the appellant in any manner.

The next claim is that the record, as a whole, shows that the purchase money received by the widow had been so dealt with by her, as to have lost its identity long before she died, and that therefore no part of the purchase money, as such, remained in her hands at her decease. We are not sure that we fully understand this claim. Apparently it is that

the entire record shows, contrary to the express finding, that the $2,200 left by the widow was no part of the purchase money, as such. We do not so read the record. The finding is that the money left by the widow came "in whole or in greater part from the proceeds of said sale;" and this is a finding of fact, which for aught we can see to the contrary, is warranted by the record, and is conclusive upon this matter. The finding thus takes away the very foundation of the appellant's claim upon this point, and the court did not err in overruling it. These are all of the assigned errors relating to the overruling of the claims made by the appellant, which it seems necessary to consider.

We come now to the rulings upon questions of evidence, the more important of which relate to the depositions used in the case.

It appears that the appellant had taken in due form the depositions of Alfred Cooper, and of his wife and daughter. Counsel for both parties had stipulated that the depositions should be filed with the clerk, and might be opened and taken away by counsel for Downs to be typewritten and copied for the convenience of court and counsel, and that one typewritten copy should be considered as the original. The original and typewritten copy were both lying upon the table before the court, and apparently in the physical possession of counsel for appellant. Alling offered to read from these depositions and to lay in evidence the portion so read. Thereupon the appellant objected, chiefly on the ground that she herself had not offered them in evidence. The court, against the objection of the appellant, ruled that under these circumstances Alling might use them.

Upon a careful examination of the record, it is difficult to see how this ruling, even if erroneous, can have harmed the appellant. The depositions were those of her own witnesses, whose testimony, from the nature of the case, would presumably be favorable to her. A good deal of that testimony, so far as it appears on the record, relates to matters not seriously disputed, and as a whole it appears to be favorable to her, or at least it does her no harm.

The fact that the ruling did not harm the appellant would justify us in passing this matter without further consideration; but as the question involved is one which, so far as we are aware, has not been decided by this court, and is one of some importance in practice, it seems advisable to express our views upon it. In most cases depositions are taken for the purpose of being used by the party taking them. The cases where they are not so used are comparatively few in number; but in such cases if the right to use the depositions be denied to the adverse party, it may work a great hardship and injustice. It will seldom be known in advance of the actual trial, whether the party taking the depositions does or does not intend to use them, and when it is known that he will not use them, it will usually be too late for the adverse party to avail himself of the testimony of the deponents in any way, although he may have relied on that testimony in support of his case. If this right be denied to the adverse party, it will in very many cases necessitate the taking of two sets of depositions of the same witnesses, involving a useless expenditure of time and money. We see no good reason why this should be done, at least not in cases like the present, where the depositions were filed with the clerk, in whose custody they must by statute remain, unless suppressed by the court, until final judgment in the cause. On the whole we see no good reason on principle for denying this right to the adverse party; and such appears to be the prevailing opinion as expressed in statutes, or rules of practice, or by the decisions of courts. See the authorities cited in 5 Amer. & Eng. Ency. of Law, p. 607. It is true, as claimed by the appellant, that some of the authorities there cited in support of this right, are not in point, as for instance the case of *Henshaw* v. *Clark*, 2 Root, 103; but after all we think it does appear that the weight of authority is in favor of this right. We think the court did not err in ruling as it did on this point.

The appellant also complains because the court, against her objection, permitted Alling to read and put in evidence such parts of the depositions as he chose; but in making

Ansonia *v.* Cooper et al.

that ruling the court informed the appellant that she might read and offer in evidence, as part of Alling's case, and not of her own, such parts of the depositions as she deemed relevant and material, and which were omitted by Alling; and after this all of the deposition of Alfred Cooper was read and most of the depositions of the wife and daughter, "and all portions were read which counsel for Downs desired to read." This ruling clearly did the appellant no harm.

She also complains of the ruling of the court in admitting testimony concerning what the three brothers said and did, in the absence of Alfred, after the mother's death. That evidence was objected to, because Alfred was not present at that meeting, and so could not be bound by what they said or did. It was offered with the promise " to connect it with Alfred Cooper and to show his subsequent knowledge and acquiescence in the same "; and this connecting evidence was subsequently offered. This ruling was clearly not erroneous.

The claimed errors already considered and disposed of, seem to be the principal errors assigned. There are other errors assigned relating to rulings upon evidence, but we deem it unnecessary to consider them separately, as none of them furnish any ground for a new trial.

There is no error.

In this opinion the other judges concurred.