CITY TRUST & SAVINGS BANK v KENNEDY

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 26, 1934

McKain, Ohl & Swanner, Youngstown, for plaintiff in error.

Fred J. Heim, Youngstown, and James T. Gilboy, Youngstown, for defendant in error.

## OPINION

By LYNCH, J.

We have taken the brief of the Bank and carefully examined each exception taken by it with respect to the introduction and rejection of evidence. We find there was no prejudicial error in the action of the trial court insofar as the introduction or rejection of evidence was concerned. We find, however, that the trial court was in error at page 233 of the record in rejecting some evidence tendered. An examination of that page will show that counsel for the Bank propounded the following question to witness McBride:

"Q. Mr. McBride, I wish you would state what in your opinion was the fair market value of this land in 1923 and 1924?"

Counsel for the plaintiff objected to this question and the same was sustained by the trial court. Counsel for the Bank put in the record, at the bottom of said page, the following:

"Exception and expect the witness to answer that the whole of it would be worth $22,000."

The important issue involved in this law suit was as to whether an agreement was entered into between plaintiff and said Bank, under which she sold to it said six promissory notes and mortgage at the face value of the notes. While some documentary evidence was introduced in the form of letters and otherwise tending to prove said agreement, there was no formal writing embodying the same. Under the plaintiff's claim, the Bank had agreed to pay her more than $45,000 for these six notes, and if the property described in the mortgage at that time was only worth $22,000, such fact would be competent evidence, in our opinion, as bearing upon the probabilities as to whether such an agreement was in fact made. However, under the evidence in this case, as we find it in the record, in our opinion this error of the trial court would not in and of itself be sufficiently prejudicial to warrant a reversal of the judgment. In this connection we observe also that as the case went to the jury under the instructions of the court there were two issues: First, as to whether said agreement was entered into, and Second, as to whether the Bank had converted to its own use said notes and mortgage. The verdict is general, and, of course, we can not determine definitely on which of the two issues it was based. No interrogatories were presented to the jury to elicit that fact. In the oral argument and in the brief filed by counsel for the Bank, numerous objections are urged to certain language used by the trial judge in instructing the jury. We have carefully read the charge of the court, and without undertaking to discuss separately the objections so made, we deem it proper to observe that a trial judge can not state everything necessary to be stated to the jury on an issue in one breath. What we mean by this is that you can select certain words and sentences from most any charge and when considered and read alone the same would not seem applicable to the case on trial, but it is the rule in Ohio in determining whether there is error in the charge of the trial court, to consider the same as a whole. If the charge taken as a whole fairly defines the issues and states the proper rules of law, that is all that is required.

In the instant case we do not find in the record written evidence of the Bank's Board of Directors or Finance Committee having authorized the purchase of the notes and mortgage of plaintiff. It was therefore necessary for the trial judge to instruct the jury what would be necessary to dis-

pense with such formal action. The court instructed the jury, in substance, that if said bank, through its officers, knew of the purchase of said notes, if purchased, and with such knowledge in fact ratified and approved such purchase, then no formal ratification by the Board of Directors or Finance Committee was necessary. In our opinion the trial judge fairly instructed the jury with respect to this feature of the case. This matter arose under the first and second defenses in the amended answer of the bank. At the request of counsel for the bank the trial judge instructed the jury that said defenses presented questions of law and were for the determination of the court itself and not the jury.

We call attention to the following authorities relative to the doctrine of "ratification", viz:

"Ratification is the adoption of a contract made on behalf of some one whom we did not authorize, which relates back to the execution of the contract, and renders it obligatory from the outset. Reid v Field, 1 SE, 395, 399; 83 Va., 26."

"A ratification, when fairly made, will have the same effect as an original authority has, to bind the principal, not only in regard to the agent himself, but in regard to third persons; and the ratification relates back to the inception of the transaction, and has a complete retroactive efficacy. Ruffner v Hewitt, 7 W. Va., 585, 604, 605."

"Ratification is equivalent to antecedent authority. Lorab v Nissley, 27 Atl., 242; 156 Pa., 329; Bell v Borough of Waynesboro. 45 Atl. 930, 931; 195 Pa., 299; Municipal Security Co. v Baker County, 54 Pac., 174, 178, 33 Or., 338; Story v Maclay, 13 Pac., 198, 201, 6 Mont. 492."

" 'Ratification' means the adoption by a person, as binding upon himself, of an act done in such relations that he may claim it as done for his benefit, although done under such circumstances as would not bind him except for his subsequent assent. Town of Ansonia v Cooper, 33 Atl. 905, 907, 66 Conn., 184."

" 'Ratification' is the approval, by act, word or conduct, of that which was attempted (of accomplishment), but which was improperly or unauthorizedly performed in the first instance. Hartman v Hornsby, 142 Mo., 368, 44 SW, 242, 244."

"The doctrine of ratification proceeds on the theory that there was no previous authority, and that the relation of principal and agent did not in fact exist, but implies it from the acts and conduct of the parties. and, when so implied, is equivalent to previous authority, and results as effectively to establish the relation of principal and agent as if the agency had been authorized in the beginning. Ballard v Nye, 72 Pac., 156, 159, 136 Cal., 883."

"Ratification, when fairly made, will have the same effect as an original authority has to bind a principal not only in regard to the agent himself, but in regard to third persons. In short, the act is treated throughout as if it were originally authorized by the principal, for the ratification relates back to the time of the inception of the transaction, and has a complete retroactive efficacy. Shuenfeld v Junkermann, (U. S.) 20 Fed., 357, 359."

"The use of the term 'ratification' in an instruction on the question of the ratification by a bank of the illegal act of its cashier, so as to bind the bank, and render it liable for the cashier's act, without expressly defining the term 'ratification', was not objectionable, since the word was not a word of rare use, nor was it also a technical term applicable to any branch of learning or science, but was a word in common use and commonly understood, and was applicable to the case, and, as used in the instruction, it was used in its usual and ordinary acceptation to mean 'acceptance', etc. Iowa State Sav. Bank v Block, 59 NW, 283, 284, 91 Iowa, 490."

After the evidence was closed, the court. over the objection of the Bank, granted leave to plaintiff to amend her petition and claim that if said notes and mortgage were not sold by the bank under an agreement. that then the bank had embezzled the same. The matter of permitting an amendment to make a pleading conform to the proof is very largely in the discretion of the trial court. From our examination of the record we are frank to say we have been unable to find therein very much evidence tending to support the claim that the Bank wrongfully converted said notes and mortgage to its own use. Therefore, in our opinion. the matter of the amendment permitted by the court with respect to conversion is not of great importance.

Upon leave of court the Bank did file an answer denying the allegations of said amendment. The case was argued and sub-

mitted to the jury and a verdict returned by it. Thereafter, and before the motion for a new trial was overruled, the Bank asked leave to file an answer to said amendment setting up the statute of limitations insofar as said claimed conversion was concerned. This request was refused by the trial judge, and the Bank excepted. In our opinion there was no prejudicial error in this action of the court.

The Bank, notwithstanding the verdict of the jury, also filed a motion asking for judgment in its favor, and which was refused by the trial court. Keeping in mind what we have said with respect to the instructions of the court, relating to what it would be necessary for the jury to find in the absence of any record of the Board of Directors or Finance Committee, authorizing the purchase of the notes and mortgage, it is our view that there was no error on the part of the trial court in refusing to enter judgment in favor of the Bank on said motion. The verdict of the jury means that it found under the instructions and evidence that said sale, if made, had been duly ratified, so that after the rendition of the verdict it becomes immaterial, if supported by sufficient evidence, whether Mr. Grant, the President of the Bank, at the time of the sale had authority to make it or whether he was acting ultra vires. A cogent bit of evidence, in our judgment, which the jury had a right to take into consideration in determining whether there was a ratification is the fact that after plaintiff's notes and mortgage were delivered and transferred to the bank, notwithstanding such mortgage was a first lien on the real estate involved, the bank applied the first $15,000 collected from the sale of the lots to the payment of its own note for $15,000 and interest, which was secured by a second mortgage on the same property.

This leaves for our consideration the claim of the Bank to the effect that the verdict of the jury is manifestly against the evidence. A reviewing court in reading a record with care will form a conviction as to what the same tends to prove and as to the probabilities arising therefrom. There are, however, some facts in this case that are unusual. The two letters written by the Bank to the plaintiff, copied into this opinion, are of that character. The plaintiff was an old lady. On the other hand, Mr. Grant, President, and Mr. Gribbon, the Treasurer of the Bank, were both trained business men. Plaintiff had known Mr. Grant for many years and of course depended upon him to look after her best

interests. The Realty Company was indebted to the Bank in the large sum of $15,000. It took a second mortgage to secure same on this land sold by the plaintiff to the Realty Company. This mortgage, as we have said, was paid in full out of the proceeds arising from the sale of lots described in plaintiff's mortgage after the notes were delivered to the bank and her said first mortgage assigned to it in writing, and by it released of record.

True it is, we were told in argument and we have learned from the record that the bank has paid to plaintiff in interest in the long period of time here involved more money than it received from the sale of lots, including the $15,000 that was received in payment of its note. That fact, however, does not mean that the bank under its second mortgage did not receive $15,000 of the proceeds arising from the sale of the lots which in fact should have gone to plaintiff under her first mortgage. Under the claim of the plaintiff, if she is correct, the bank was receiving full value for the interest paid to her by the ownership of the principal of her six notes.

Mr. Gribbon testified that while he signed the letter dated April 20th, 1923, the same was written by Mr. Grant and signed by him at his request. One Edward Peebles was a witness for the plaintiff. His testimony shows that he is a friend and long time acquaintance of plaintiff and assisted her with the bank in the business matters here involved. He testified in so many words that he was present in Mr. Grant's office, the President of the Bank, when the alleged agreement was entered into, and that it was agreed that the Bank would take over the six notes at their face value, and his testimony is not denied.

It further appears from the record that Mr. Grant was not present at the trial, and the only evidence therein from him is in the form of an affidavit containing certain facts to which he would testify if present. Among other things, it is stated in said affidavit that neither he nor said Bank at any time purchased or agreed to purchase said notes and mortgage of plaintiff. The affidavit of necessity consists largely of abstract facts and conclusions. In view of the other testimony in the record, it would have been much more satisfactory to the jury had Mr. Grant appeared as a witness when he could have been examined in chief and also under cross examination. In view of the state of the evidence as disclosed by the record and the rules applicable to this court, we could not,

and do not, find that the verdict is manifestly against the evidence.

Some question was raised in this case in the oral argument as to the form of the judgment, and also it is mentioned in the briefs, by reason of the fact that the bank was reorganized under a certain agreement signed by plaintiff. We learn from the record that plaintiff was a depositor of other funds in the bank in an amount of approximately $1000.00, and with respect to the same she signed a Power of Attorney consenting to a certain plan of reorganization. With the record as it is we can not now say that the judgment is not in proper form.

The judgment of the Court of Common Pleas is affirmed, and the petition in error is dismissed at its costs.

Judgment affirmed.

FARR and ROBERTS, JJ, concur in the judgment.