# SIOUX CITY TERMINAL RAILROAD AND WAREHOUSE COMPANY *v.* TRUST COMPANY OF NORTH AMERICA.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 192. Argued January 23, 24, 1899. — Decided February 20, 1899.

The Supreme Court of Iowa having repeatedly decided that in that State the fact that a corporation of Iowa contracts a debt in excess of its charter or statutory limitation does not render the debt void, but, on the contrary, such debt is merely voidable, and is enforceable against the corporation and those holding under it, and gives rise only to a right of action on the part of the State because of the violation of the statute, or entails a liability on the officers of the corporation for the excessive

debts so contracted, this court holds itself bound by those decisions, without determining whether as an independent question, it would decide that the issue of stock by a corporation, in excess of a statutory inhibition, is not void, but merely voidable.

THE facts which are revelant to the controversy arising on this record are as follows: The Sioux City Terminal Railroad and Warehouse Company (hereafter designated as the Terminal Company) was, in 1889, incorporated under the general laws of the State of Iowa with an authorized capital of one million of dollars. In January, 1890, the corporation, by authority of its board of directors, authorized by its stockholders, mortgaged in favor of the Trust Company of North America its "grounds, franchises, liens, rights, privileges, lines of railway, side tracks, warehouses, storage houses, elevators and other terminal facilities . . . within the corporate limits of the city of Sioux City," all of which property was more fully described in the deed of mortgage. The purpose of the mortgage was to secure an issue of negotiable bonds with the interest to accrue thereon, the bonds being for the face value of one million two hundred and fifty thousand ($1,250,000) dollars. The form of the bonds was described in the deed, and they were numbered from 1 to 1250 inclusive. The deed contained a statement that the corporation "has full power and authority under the laws of the State of Iowa to create this present issue of bonds and to secure the same by mortgage of all its property, leases and franchises." The bonds thus secured were negotiated to innocent purchasers for value and the proceeds were applied to the credit of the company.

In 1893 the Terminal Company also mortgaged in favor of the Union Loan and Trust Company, an Iowa corporation, the property previously mortgaged, as above stated, this second mortgage being to secure one hundred and ninety promissory notes, fifty whereof were for one thousand dollars each and one hundred and forty whereof were for five thousand dollars each, the total aggregating seven hundred and fifty thousand ($750,000) dollars. All the notes referred to in this mortgage bore the date of the deed, which contained

the following covenant: "The said party of the first part (that is, the mortgagor) hereby covenants that the said premises are free from all incumbrances, excepting a deed of trust made on the first day of January, A.D. 1890, by said party of the first part to the Trust Company of North America of Philadelphia, to secure the sum of one million two hundred and fifty thousand ($1,250,000) dollars of bonds, and the said party of the first part will warrant and defend the title unto the said party of the second part, its successors and assignees, against all persons whomsoever claiming the same, subject to the lien of the said prior deed of trust."

On the tenth day of October, 1893, in the United States Circuit Court for the Northern District of Iowa, a bill was filed by certain national banks, citizens of other States than the State of Iowa, against the Terminal Company, E. H. Hubbard, as assignee of the Union Loan and Trust Company, and others, having for its object the foreclosure of the second mortgage above referred to. Without fully recapitulating the averments of the bill, it suffices to say that it alleged that the notes which were secured by the second mortgage had been placed in the hands of the Union Loan and Trust Company in part for the benefit of certain claims against the Terminal Company held by the complainants; that the Union Loan and Trust Company had, in April, 1893, made an assignment to E. H. Hubbard for the benefit of all its creditors, and that Hubbard had succeeded to the rights and obligations of the company of which he was assignee, and in which capacity he held the notes secured by the second mortgage, and the benefit of which the complainants were entitled to invoke for the purpose of procuring the payment of their claims. A receiver was prayed for and was appointed.

On the 23d of December, 1893, the Terminal Company, reciting the fact that the notes which were secured by the second mortgage for $750,000 had been drawn, and the mortgage given for the benefit of certain outstanding creditors whose claims amounted to $728,000, and that the notes covered by the second mortgage had been placed in the hands of the Union Loan and Trust Company for the benefit of such

creditors; that the company had made an assignment to Hubbard, assignee, and in that capacity he had received the notes in question; that in a suit pending in the Northern District of Iowa, to foreclose said second mortgage, a question had arisen whether such creditors were entitled to avail themselves of the benefit of the second mortgage. Therefore, in order to allay any such question and to give the creditors intended to be covered by the second mortgage an undoubted right to claim under it, the deed conveyed absolutely to Hubbard, trustee, the property covered by the mortgage, giving to the trustee full power to realize and apply the property and rights to the discharge of the debts secured or intended to be secured as above stated. It suffices, for the purpose of this case, to give this outline of the deed in question, without stating all the various clauses found in it intended to accomplish the purpose which it had in view. The deed, however, contained this declaration: "This conveyance is made, however, with full notice of the assertion of the following claims against the said property, to wit, a certain mortgage or trust deed to the Trust Company of North America, of Philadelphia, Pennsylvania, as trustee, to secure certain bonds for the sum of one million two hundred and fifty thousand ($1,250,000) dollars, and also certain mechanics' liens to the amount of about $55,000, and also certain judgments to the amount of about $20,000. Nor shall said first party (that is, the transferrer) be understood to covenant that there are not other claims than those hereinbefore expressly mentioned, none of which, however, are to be considered and assumed by said second party, (Hubbard, trustee,) nor by the acceptance of this deed is he in anywise held to admit the validity of said trust deed liens, judgments or of any claims made or that may arise thereunder, nor shall this deed be held in any manner to operate as the merger of said mortgage to said Union Loan and Trust Company, but said mortgage shall at all times be kept in full force until all persons and corporations entitled and claiming benefits thereunder shall consent to its discharge, or so long as it may be necessary to keep said mortgage in force for the protection

of the title herein conveyed, or any interest claimed by virtue hereof."

Default having taken place in the payment of the interest on the bonds secured by the first mortgage, the Trust Company of North America, as the trustee, filed its bill in the Circuit Court of the United States for the Northern District of Iowa for foreclosure. On the 20th of June, 1894, the court ordered the two foreclosure suits, that is, the one previously brought by certain national banks in October, 1893, and the one brought by the Trust Company of North America, to be consolidated, and appointed the same person who had been made receiver under the first bill also the receiver under the second. On July 23, 1895, the Credits Commutation Company, a corporation organized under the laws of the State of Iowa, filed its suit against the Terminal Company in the state court of Iowa in and for Woodbury County. It was alleged that the Credits Commutation Company had become the holder and owner of a large number of the claims against the Terminal Company which were intended to be secured by the second mortgage and for whose benefit the deed to Hubbard, trustee, had been made. The relief sought was a judgment against the Terminal Company "without prejudice to any rights or interests which the plaintiff (the Credits Commutation Company) may have as a holder of said notes in the said trust deed;" that is, the deed of trust to Hubbard, trustee, for the benefit of the noteholders as already mentioned. On the day the suit was filed the Terminal Company answered, admitting the correctness of the claim, and judgment was then entered for $692,096.95 with interest, the whole without prejudice to the rights of the parties under the deed of trust as prayed for.

The Terminal Company in its answer to the suit for foreclosure brought by the Trust Company of North America relied upon many defences, only one of which need be referred to, that is, that the bonds and the mortgage in favor of the said Trust Company of North America were *ultra vires.* However, it may be observed that the Terminal Company by its answer asserted that the rights of those entitled to claim

under the second mortgage or the conveyance, made for their benefit to Hubbard, trustee, were paramount to the claims of the Trust Company of North America, or the bondholders under the first mortgage in favor of that company. The Credits Commutation Company intervened in the foreclosure proceedings, averring that the bonds secured by the deed in favor of the Trust Company of North America were void, because the Terminal Company at the time the bonds were executed was without lawful power to issue them or to secure them by mortgage. It was also claimed that in virtue of the judgment rendered in the state court the Credits Commutation Company was a creditor of the Terminal Company to the amount of the judgment, and was entitled to avail itself of the rights accruing to it from the deed of conveyance made by the Terminal Company to Hubbard, trustee, and therefore that the Credits Commutation Company was entitled to be paid from the proceeds of the property sought to be foreclosed before the holders of the bonds secured by the deed which had been made in favor of the Trust Company of North America.

The trial court decided in favor of the validity of the bonds issued to the Trust Company of North America and of the mortgage securing the same. 69 Fed. Rep. 441. On appeal to the Circuit Court of Appeals for the Eighth Circuit, the judgment of the trial court was affirmed. 49 U. S. App. 523. The case then, by the allowance of a writ of certiorari, was brought to this court.

*Mr. Henry J. Taylor* and *Mr. John C. Coombs* for the Railroad and Warehouse Company.

*Mr. Asa F. Call* for the Trust Company. *Mr. Joseph H. Call* was on his brief.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The errors assigned and the discussion at the bar confine

the question to be decided solely to the validity of the negotiable bonds of the Terminal Company which were issued to the Trust Company of North America, and which were sold in open market to innocent purchasers for value and the proceeds of which inured to the benefit of the Terminal Company. The issue for decision is restricted to this question, since all the errors assigned and the contentions based upon them depend on the assertion that the bonds issued to the Trust Company of North America, and the mortgage by which their payment was secured, were wholly void. This complete want of power in the Terminal Company is predicated upon certain requirements of the law of the State of Iowa, existing at the time of the incorporation of the Terminal Company, and of a provision in the charter of that company, inserted therein in compliance with the Iowa statute. The law of Iowa relied on is section 1611 of the Iowa Code of 1897, contained in the portion thereof relating to the organization of corporations, and is as follows:

"Such articles must fix the highest amount of indebtedness or liability to which the corporation is at any one time to be subject, which in no case, except risks of insurance companies, and liabilities of banks not in excess of their available assets, not including their capital, shall exceed two thirds of its capital stock. But the provisions of this section shall not apply to the bonds or other railway or street railway securities, issued or guaranteed by railway or street railway companies of the State, in aid of the location, construction and equipment of railways or street railways, to an amount not exceeding sixteen thousand dollars per mile of single track, standard gauge, or eight thousand dollars per mile of single track, narrow gauge, lines of road for each mile of railway or street railway actually constructed and equipped. Nor shall the provisions of this section apply to the debentures or bonds of any company incorporated under the provisions of this chapter, the payment of which shall be secured by an actual transfer of real estate securities for the benefit and protection of purchasers thereof; such securities to be at least equal in amount to the par value of such bonds or debentures, and to be first

liens upon unencumbered real estate worth at least twice the amount loaned thereon."

The part of the foregoing section commanding the insertion in the charter of incorporated companies of the amount of liability for which the corporation could at one time be subject, and limiting such amount to two thirds of the capital stock, originated in the State of Iowa in the year 1851, and was continuously in force from the time of its adoption in the year in question up to the period when it was embodied in the Code of 1897. Iowa Code, 1851, Title 10, c. 43, § 676; Iowa Code, 1873, Title 9, § 1061. The subsequent portions of the section creating exceptions as to certain classes of railway bonds, and as to bonds secured by an actual transfer of real estate securities, originated, the one March 30, 1884, and the other March 30, in the year 1886, and continued in force until they were also incorporated in the Iowa Code of 1897. 20 Iowa Laws, c. 22; 21 Ib. c. 54. And section 1622 of the Iowa Code also contains the following cognate provision: ". . . If the indebtedness of any corporation shall exceed the amount of indebtedness permitted by law, the directors and officers of such corporation knowingly consenting thereto shall be personally and individually liable to the creditors of such corporation for such excess."

The portion of the charter of the Terminal Company fixing, in obedience to the statutory requirement, the amount of the debt which could at any one time exist was as follows:

" The highest amount of indebtedness to which this (Terminal) company shall at any time subject itself shall not exceed two thirds of the paid-up capital stock of said company, aside from the indebtedness secured by mortgage upon the real estate of the company."

As the sum of the bonds which were issued and secured by the mortgage in favor of the Trust Company of North America exceeded the statutory limit and the amount stated in the charter, the question which arises first for consideration is this: Did this fact render them void; and, secondarily, was the issue of bonds taken from out the operation of the general rule laid down in the statute by the exceptions mentioned in the

latter portions thereof? As the claim that the bonds were void is based on the statutory provisions above referred to, it follows that we are compelled to primarily ascertain the meaning and operation of the state law. In making this inquiry we are constrained in the first place to inquire what construction has been placed upon the Iowa statute by the Supreme Court of that State, for it is an elementary principle that this court in interpreting a state statute will construe and apply it as settled by the court of last resort of the State, and will hence only form an independent judgment, as to the meaning of the state law, when there was no binding construction of such state statute by the court of last resort of the State. *Nobles* v. *Georgia*, 168 U. S. 398; *Aberdeen Bank* v. *Chehalis County*, 166 U. S. 440; *Morley* v. *Lake Shore and Mich. South. Railway Co.*, 146 U. S. 162, 166, and authorities there cited.

The subject-matter of the creation by an Iowa corporation of a debt in excess of the maximum amount fixed in its charter in accordance with the requirement of the statute, and also in excess of the sum limited by the state law, was considered by the Supreme Court of the State of Iowa in *Garrett* v. *Burlington Plough Co.*, (1886) 70 Iowa, 697. The case was this: An action was brought in chancery to foreclose a mortgage executed by the Burlington Plough Company, an Iowa corporation, to the plaintiff as a trustee for certain of its creditors upon real estate and personal property. The authorized capital stock of the corporation was fifty thousand dollars. The maximum limit imposed by the articles of incorporation was the maximum imposed by the statute, that is, two thirds of the amount of the capital stock. The corporation had contracted an indebtedness in excess of the limitation fixed by the statute and fixed by the charter; that is, with an authorized capital stock of fifty thousand dollars it had contracted an indebtedness exceeding fifty thousand dollars, of which total indebtedness the sums pressed in the foreclosure suit were a part. The defence to the suit was twofold: First, that the total debt of the corporation, including that sued on, was in excess of the two thirds limitation; and, second, that the mortgage was void because it had been granted to protect certain directors

of the corporation to the prejudice of its general creditors. The fact that the debt exceeded the two thirds allowed by the charter and the statute was admitted on the face of the record and stated by the court in its opinion to be unquestioned. The court said (p. 701):

" Do the facts alleged in the answer, that the holders of the notes, as directors of the company, in the management of its affairs, contracted indebtedness beyond the limit prescribed by the articles of incorporation, and caused the mortgage to be executed to secure the amount due them, defeat their security, and give other creditors a right to share in the proceeds of the property mortgaged ? We do not understand counsel for defendants to claim that a debt of the corporation beyond the prescribed limits of its indebtedness is invalid, and, if held by a director of the corporation, cannot be enforced for that reason alone. It may be that a director would be answerable to stockholders or others for negligence or mismanagement of the affairs of a corporation whereby debts were contracted in excess of the limitation prescribed in the articles of incorporation ; but it cannot be claimed that such a debt, for a consideration received by the corporation, cannot be enforced against it."

Again referring to the same subject, the court said (p. 702):

" It is averred that the directors unlawfully contracted indebtedness of the corporation in excess of the limit prescribed by its articles of incorporation. But this has nothing to do with the directors' claims in controversy. As we have before said, they may be liable to proper parties for their negligence or unlawful acts, but honest contracts made with them are not defeated thereby."

In *Warfield* v. *Marshall County Canning Co.*, (1887) 72 Iowa, 666, where a debt had been confessedly contracted by a corporation in excess of its charter limitation, confining the power of the corporation to create a debt to a sum not exceeding one half of the capital stock actually paid in, the court, in considering the legal consequences of such excessive debt, said (p. 672):

" The proposition is stated by counsel, but it is not, we

think, insisted upon, that the mortgage is *ultra vires*, because the articles of incorporation provide ' that it shall be competent to mortgage the property of the company to the amount of not exceeding one half of the capital stock actually paid in.' The question was determined adversely to appellant in *Garrett* v. *Plough Co.*, before cited."

It follows, then, that at the time of the issue of the bonds in favor of the Trust Company of North America, and of the execution of the deed of mortgage by which such bonds were secured, the Supreme Court of the State of Iowa had, in two cases, declared the law of that State to be that a debt contracted in excess of the maximum limitation stated in the charter, in virtue of the provisions of the statute requiring that such maximum limit should be fixed, was not void, although the consequence of contracting a debt beyond the limitation might be to entail upon the officers of the corporation a personal liability for the amount thereof.

Light is thrown upon the condition of the law of the State of Iowa, on the question now before us, by a decision of the Supreme Court of that State, wherein it was called upon to consider issues arising from the identical contracts which are involved in this case. The cause was adjudged in the Supreme Court of Iowa after the decision of the trial court in this cause, and after that of the Circuit Court of Appeals. Without deciding that the construction given the statute by the Supreme Court of the State of Iowa at the time and under the circumstances stated is necessarily controlling on this court, such interpretation, conceding that it is not controlling, is manifestly relevant for the purpose of elucidating the previous decisions of the Supreme Court of Iowa, and as indicating what was the settled law of that State at the time the contract in question was entered into and prior to the time when the controversy which this case presents originated in the courts of the United States. The decision in question is *Beach* v. *Wakefield*, (1898) 76 N. W. Rep. 688, (not yet reported in the official reports of the State of Iowa). The case as stated in the report thereof was this : Beach, a sub-contractor, commenced proceedings to establish and foreclose a mechanic's

lien on a depot built by the Terminal Company. Wakefield was the principal contractor for building the depot. He denied in part the claim of Beach, and sought also on his own behalf to be recognized as having a mechanic's lien upon the depot. The Terminal Company, the Trust Company of North America and the Credits Commutation Company were parties to the cause. The decree of the Supreme Court of Iowa recognized in part a mechanic's lien on the depot building paramount to the mortgage in favor of the Trust Company of North America, but adjudged that the bonds issued to the Trust Company of North America and the mortgage by which they were secured were paramount to the claim of the Credits Commutation Company and others holding junior mortgage rights. In considering the legal result of the creation of a debt in excess of the statutory limitation the court said (p. 694):

"A distinction is to be taken between contracts like this and those which, independent of statute, are in violation of public policy. The creation of this indebtedness involved no moral turpitude. The making of the mortgage did not disable the corporation from performing its duties to the public. The Terminal Company had a right to incur a debt, and to execute a mortgage to secure it. The only ground of complaint is that it went further than the law permitted. Of this the State may complain, but the Terminal Company cannot; nor can any person whose rights are derived through the Terminal Company, and who acquired such rights with knowledge of the mortgage lien."

Again, in commenting on the same subject, the court said (p. 695):

"We are aware that the security has been held invalid, and a right of recovery thereon denied, in many cases where an action has been permitted upon the common counts. But we think these cases will be found to involve contracts which were absolutely void and not, as in the case at bar, voidable only. This distinction is clearly preserved in the cases. In *Garrett* v. *Plough Co., supra,* the indebtedness exceeded the charter limit of the corporation, and the creditors had notice

thereof when the transaction took place; and yet a right of recovery was allowed and the lien of the mortgage upheld."

Recurring to the legal consequence, under the Iowa statute, of contracting a debt in excess of the statutory limit, the court said (p. 695):

"It is said further that the plea of estoppel can be urged only in favor of the innocent, and that the bondholders here are not of that class, for they are held to notice of the corporate power of the Terminal Company. This rule has been applied in cases where the act done was wholly void because of an absolute want of power to sustain it and in cases where considerations of public policy intervened. Here, as repeatedly said, the act is voidable only. The statute does not even impose a penalty therefor."

The argument, then, reduces itself to this: Although it was conclusively settled by the decisions of the State of Iowa at the time the contract in question was entered into, that a debt contracted by a corporation in excess of the statutory limitation was in no sense of the word void, but on the contrary was merely voidable, that we nevertheless should, in enforcing the state statute, disregard the construction affixed to it by the Supreme Court of the State of Iowa, and hold that the act of the corporation in exceeding the limit of debt imposed by the statute or fixed in the charter in compliance with the statute was absolutely void. But to so decide would violate the elementary rule previously referred to, under which this court adopts and applies the meaning of a state statute as settled by the court of last resort of the State. As then under the Iowa law, the fact that the corporation contracted a debt in excess of the charter or statutory limitation did not render the debt void, but, on the contrary, such debt, by the settled rule in Iowa, was merely voidable, and was enforceable against the corporation and those holding under it, and gave rise only to a right of action on the part of the State because of the violation of the statute, or entailed, it would seem, a liability on the officers of the corporation for the excessive debt so contracted, it follows that the whole foundation upon which the errors assigned in this court must rest is without support in

respect of Federal law, and therefore the decrees below were correctly rendered.

It is claimed, however, that this court is not obliged to follow the Iowa decisions interpreting the statute of that State, because it is assumed that those decisions proceed alone upon the principle of estoppel. Estoppel, it is argued, is a matter of general and not of local law upon which this court must form an independent conclusion, even although in doing so it may disregard the rule established in the State of Iowa by the Supreme Court of that State. Whatever, it is argued, may be the rule in state courts, in this court it is settled that a corporation cannot be estopped from asserting that it is not bound by a corporate act which is absolutely void, citing, among other cases, *Pullman's Palace Car Co.* v. *Central Transportation Co.*, 171 U. S. 138; *California Bank* v. *Kennedy*, 167 U. S. 362; *McCormick* v. *Market National Bank*, 165 U. S. 538; *Central Transportation Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24.

But we are not called upon, in the case before us, to decide the question thus raised, since it rests upon an assumption that the court of Iowa has decided that the corporation was by estoppel prevented from complaining of a void act. But the Supreme Court of Iowa has not so decided. On the contrary, whilst in the course of its opinions it has referred to the doctrine of estoppel, it expressly, in the cases cited, made the application of the doctrine depend upon the legal conclusion found by it, that the act of a corporation in contracting a debt in excess of the statutory limit was not void but merely voidable, and for this reason the corporation, or those holding under it, could not be heard to assail the act in question. The decisions of this court which are relied upon considered the application of the doctrine of estoppel to corporate acts absolutely void, and not its relation to contracts which were merely voidable. Whether, as an independent question, if we were enforcing the Iowa statute, we would decide that the issue of stock by a corporation in excess of a statutory inhibition was not void but merely voidable, need not be considered, since, as we have said, in applying an Iowa law, we follow

·the settled construction given to it by the Supreme Court of that State.

It necessarily follows that the decrees of the Circuit Court and of the Circuit Court of Appeals were correct, and both are therefore

*Affirmed.*