H. SCHERER & CO. et al. v. EVEREST.†

(Circuit Court of Appeals, Eighth Circuit. March 20, 1909.)

No. 2,802.

1. DEPOSITIONS (§ 83*)—SUPPRESSION NOT REMEDY FOR REFUSAL TO TESTIFY.
   The suppression of depositions is not the remedy in equity and bankruptcy in the federal courts for the refusal of a witness to answer competent questions or to produce material evidence, because in case of an appeal all the evidence adduced must be presented to the appellate court.
   The true remedy is an enforced order of the proper court that the witness answer or produce the evidence.
   [Ed. Note.—For other cases, see Depositions, Cent. Dig. § 221; Dec. Dig. § 83.*]

2. DEPOSITIONS (§ 101*)—PARTS OF MAY BE INTRODUCED BY OPPOSING PARTY.
   When the taker of a deposition fails or refuses after its return to put it in evidence, the opposing party may introduce all or a part of it, and the taker may then put in evidence any other part not introduced by his opponent.
   [Ed. Note.—For other cases, see Depositions, Cent. Dig. § 238; Dec. Dig. § 101.*]

3. CORPORATIONS (§§ 450, 599*)—ULTRA VIRES—HOLDERS FOR VALUE OF EXCESSIVE INDEBTEDNESS MAY ENFORCE NOTWITHSTANDING.
   The fact that a corporation, authorized to issue commercial paper within a limit prescribed by a statute which does not declare indebtedness

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied June 3, 1909.

in excess of that limit void, created an indebtedness in excess of the limit to the knowledge of the purchasers of this commercial paper for value, does not relieve it from liability thereon.

The remedy for the violation is ouster of the corporation by the state, not the destruction of the purchasers' contracts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1793–1795, 2397, 2400, 2402; Dec. Dig. §§ 450, 599.*]

**4.** CORPORATIONS (§ 388*)—ESTOPPEL (§ 72*)—ULTRA VIRES—NO DEFENSE TO ACCOMMODATION PAPER HELD FOR VALUE.

A corporation authorized to issue commercial paper, which issues it without consideration to, a second corporation which it authorizes to sell it and to remit the proceeds, or to substitute it for the earlier paper of the first corporation, is estopped from denying liability upon it to a purchaser without notice to whom the second corporation has indorsed it in payment of its just debt or for cash.

"When a corporation has power under any circumstances to issue negotiable securities, the bona fide holder has a right to presume that they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper."

Where one of two parties must suffer loss from the fault of a third, he who intentionally or culpably clothed the third party with power to cause the loss must bear it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. § 388;* Estoppel, Cent. Dig. § 188; Dec. Dig. § 72.*]

**5.** BILLS AND NOTES (§ 358*)—TAKING FOR DEBT OR AS COLLATERAL SECURITY IS TAKING FOR VALUE.

The taking of commercial paper in payment of a debt due, or past due, or as collateral security therefor, is a purchase for value in the ordinary course of business, and clothes the taker with the protection of such a purchaser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 913–923, 961; Dec. Dig. § 358.*]

**6.** BILLS AND NOTES (§ 363*)—BONA FIDE HOLDER ENTITLED TO AMOUNT OF DEBT PAID FOR FRAUDULENT PAPER—SECTION 3070, IOWA CODE.

Where one takes commercial paper without notice in payment of a debt of an indorser, who had obtained it by fraud from the maker, he is entitled to recover the amount of the debt paid for it under section 3070, Code Iowa, which provides that no holder of such paper shall recover a greater sum than he paid for it.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 363.*]

COURTS (§ 372*)—FEDERAL COURTS—FORM INDEPENDENT JUDGMENT OF COMMERCIAL AND GENERAL LAW.

It is the duty of the national courts to exercise their independent judgment in the determination of all questions of general jurisprudence, of commercial law, and of right under the Constitution and laws of the United States, although the decisions of state courts may conflict.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

(Syllabus by the Court.)

Appeal from the District Court of the United States for the Southern District of Iowa.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I. N. Flickinger (Flickinger Bros. and Walter S. Harlan, on the brief), for appellants.

George H. Mayne (Mayne & Hazelton, Wright & Baldwin, Harl & Tinley, and G. B. Jennings, on the brief), for appellee.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. This is a proceeding in bankruptcy wherein nine creditors have appealed from a decree of the District Court which disallowed certain portions of their claims against the estate of the bankrupt and affirmed rulings of the referee which suppressed the testimony of some of their witnesses. The claims of these alleged creditors are founded upon promissory notes made by the Union Transfer Company, a corporation, the bankrupt, payable to the order of the New Decatur Buggy Company, another corporation, and indorsed by the latter before maturity in the ordinary course of business to the respective claimants.

The Transfer Company was engaged in the business of buying and selling carriages, wagons, tools, and agricultural implements in the state of Iowa. The Decatur Company was manufacturing and selling carriages in the state of Ohio. In 1905, the Transfer Company agreed that prior to September 30, 1906, it would purchase of the Decatur Company 1,000 vehicles, and in September, 1906, it contracted to buy 1,500 vehicles of the Decatur Company before September 1, 1907. These contracts provided that the Transfer Company should pay for these vehicles upon their receipt by promissory notes payable to the order of the Decatur Company without interest, four months after the dates of the invoices respectively. These parties further agreed, and they performed this agreement, that the Transfer Company should order vehicles in advance of its needs, and should deliver to the Decatur Company its notes therefor payable in four months from their date; that at the maturity of these notes the Transfer Company should make and deliver like notes payable in four months to the Decatur Company, called "renewal notes," which the latter company should use to take up the original notes when possible, and, when this was impracticable, should discount and send the proceeds to the Transfer Company to enable it to pay these original notes. Under this agreement and practice the Transfer Company issued two classes of original notes, those given for vehicles received, and those given for vehicles to be delivered; and it issued three classes of renewal notes, those issued to take up original notes for vehicles received, those used to take up original notes for vehicles to be delivered, and those issued to be discounted by the Decatur Company to raise money to send to the Transfer Company to pay the original notes which could not be renewed. All the notes of these various classes were in the usual form of such commercial paper, and there was nothing about them to enable any third party to distinguish those of one class from those of any other. A very large number of these notes, which amounted in the aggregate to more than $60,000, was issued, and many were paid; but in January, 1907, when the Transfer Company was adjudged a bank-

rupt, it owed more than $200,000 and notes of the Transfer Company to the aggregate amount of more than $60,000 were held by the claimants. The Decatur Company had not delivered all of the vehicles to be delivered for which some of these notes had been issued, and it had failed to pay over to the Transfer Company some of the proceeds of some of these notes which the Transfer Company had delivered to it to be discounted to raise money to enable the Transfer Company to pay its original notes. There was evidence tending to show that notes to the amount of about $60,000 had been issued either for undelivered buggies, for renewals of notes for undelivered buggies, or for money for which the Transfer Company had received only about $14,000 in value; but the evidence upon this subject is uncertain and unsatisfactory, and it fails to show clearly which of these numerous notes were issued for undelivered buggies, which for renewals of notes for undelivered buggies, which for cash that was not remitted, and which for cash actually returned. H. Scherer & Co. is a corporation engaged in the manufacture of carriage materials at Detroit, in the state of Michigan, and one of the claimants in this proceeding. It sold some of its carriage materials to the Decatur Company from time to time, and took in payment of its past-due account against that company, and for cash, 12 of these notes before they respectively matured, which amounted in the aggregate to $12,917.40. Scherer & Co. filed these notes and formal proof of its claim upon them in the bankruptcy proceeding against the Transfer Company. The trustee objected to the allowance of its claim, testimony was taken, the referee suppressed that of the claimant, allowed it $2,209.25, upon two of the notes which it held, and disallowed the remainder of its claim. The objections of the trustee were: (1) That the notes were delivered to the Decatur Company without any consideration to the Transfer Company; (2) that they were left in the hands of the Decatur Company to be negotiated for the Transfer Company, and were converted to its own use by the Decatur Company; (3) that the claimant took the notes with notice of their infirmity as collateral security for a debt of the Decatur Company; and (4) that the claim was not filed in good faith but for the Decatur Company.

It is assigned as error that the testimony of H. Scherer was suppressed by the referee and by the court for the reason that he refused to answer questions and produce exhibits on cross-examination. The facts pertinent to this specification are these: Scherer testified at Detroit, Mich., on May 1, 1907; the motion to suppress his deposition was filed with the referee in Iowa on June 29, 1907; the referee sustained that motion on September 30, 1907; on October 1, 1907, the claimant moved that the deposition be returned to the notary public for the purpose of having the questions upon cross-examination answered, and that motion was denied by the referee. Scherer testified in his deposition upon his direct examination that he was the president of the claimant; that between August 20 and November 30, 1906, he purchased the notes of the Transfer Company from the Decatur Company before their maturity for his corporation, and that his corporation paid the face value thereof less interest at 6 per cent. per annum, with a just claim it held against the Decatur Company to the amount

of about $8,500 and with $3,450 in cash; and that neither he nor any of the officials of the corporation, so far as he knew, had any knowledge or information of any infirmities or defects in or defenses to the notes when he purchased them. The exhibits which he refused to produce on cross-examination were a written guaranty made by the Decatur Company after the failure of the Transfer Company of the payment of the notes, certain notes made by the Decatur Company after that failure for the estimated difference between the prospective dividend from the estate of the Transfer Company and the face of the notes, and correspondence between Scherer & Co. and the Decatur Company relating to the notes in controversy and the bankruptcy of the Union Transfer Company. He did not refuse to answer any admissible question on cross-examination. He testified that the guaranty was in charge of Mr. Hoof, who was sick; that it would take considerable time, several hours, to find it; and that it would take several days to collect all the correspondence. His counsel stated at the time of taking the deposition that a copy of the guaranty and of the correspondence relating to the purchase of the notes would be attached to the deposition, and it was. In this state of the case the referee suppressed this deposition, and his order in that regard was erroneous. The guaranty and the notes of the Decatur Company were immaterial in this proceeding, because they were taken after the purchase of the notes of the Transfer Company by the claimant, and the excuse given by the witness for his failure to produce the correspondence, in the absence of any evidence of a prior notice to him so to do, was a reasonable one. A deposition may not be suppressed because the witness fails to answer irrelevant questions or to produce immaterial evidence. Fenn v. Georgia Ry. & Electric Co., 122 Ga. 280, 50 S. E. 103, 104.

The deposition of Barnitz, a witness for another of the claimants, was suppressed because, after he had testified on direct examination that between July, 1906, and November 12, 1906, the claimant had purchased for value without notice 19 of these notes, he refused to produce letters written subsequent to those dates, and after the failure of the Transfer Company, between the Decatur Company and the claimant, and between the claimant and Flickinger Bros., its attorneys, concerning these notes and the bankruptcy of the Transfer Company. The letters were utterly immaterial, were not part of permissible cross-examination, and the deposition should have been received and considered. Other depositions were suppressed, but it is unnecessary to consider the rulings upon them, because the relevant matters to which they refer are sufficiently proved to sustain the claims of the appellants to which they refer without them.

The trustee took the deposition of one Elwood, one of the officers of the Decatur Company, but did not introduce it in evidence. The claimants offered in evidence a portion of this deposition, and the referee and the court below ruled it out on the ground that the claimants could not introduce arbitrarily any part of the deposition, and on the further ground that the attorneys for the trustee attempted to verify the statements in it, but the witness refused to produce and permit them to introduce books and papers which they demanded. But this was

a witness called by the trustee. He took his deposition. After it was taken and returned to the court, it was at the command of either party in the controversy. The fact that the trustee elected not to compel his witness to produce the books and papers for which he called cannot deprive the claimants of the benefit of the evidence which the witness actually gave. The testimony offered by the claimants was relevant and material to an important issue in this controversy, and it should have been received. If that testimony was contradicted or modified by other parts of the deposition, it was the right and the privilege of the trustee to put those parts in evidence. When the taker of a deposition fails or refuses after its return to put it in evidence, the opposing party may introduce all or a part of it, and the taker may then put in evidence any part not introduced by his opponent. Jones on Evidence (2d Ed.) § 685; Hale v. Gibbs, 43 Iowa, 380; Calhoun v. Hays, 8 Watts & S. 127, 42 Am. Dec. 275; Converse v. Meyer, 14 Neb. 190, 192, 15 N. W. 340; Town of Ansonia v. Cooper, 66 Conn. 184, 33 Atl. 905, 908.

The rulings of the referee and of the court upon the various motions to suppress the depositions of these witnesses have been considered, so far as they were material, on the theory, adopted by court and counsel below, that the suppression of depositions was the proper remedy for the refusal of witnesses to produce relevant evidence. But this is an error. The remedy in the national courts in equity and in bankruptcy for the failure or refusal of a witness to answer competent questions or to produce material evidence is not the suppression of the deposition or of the evidence which he does produce, and that for the reason that all evidence which is not glaringly irrelevant, whether deemed material and competent by the referee and the court below or not, must be made a part of the record, and in case of an appeal returned to the appellate court to the end that a final adjudication may be rendered in that court without another hearing below. The true remedy for the refusal of a witness to answer proper questions or to produce relevant evidence is an enforced order of the proper court that he shall do so. Dowagiac Mfg. Co. v. Lochren, 74 C. C. A. 341, 343, 344, 143 Fed. 211, 213, 214; First National Bank v. Abbott (C. C. A.) 165 Fed. 852, 855; Blease v. Garlington, 92 U. S. 1, 7, 8, 23 L. Ed. 521; In re De Gottardi (D. C.) 114 Fed. 328, 342; Dressel v. North State Lumber Company (D. C.) 119 Fed. 531; In re Romine (D. C.) 138 Fed. 837, 839.

We return to the claim of Scherer & Co. The question it presents is, Was this claim a fixed liability of the Transfer Company when the petition in bankruptcy was filed against it? Bankruptcy Law, c. 541, § 63 (Act July 1, 1898, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]). If the Transfer Company could not have escaped liability to Scherer & Co. upon this claim then neither the trustee nor other creditors of the Transfer Company can defeat it now, for these creditors derive all their rights here through it, and they have no defenses to this claim which were not available to the Transfer Company.

The 10 promissory notes of the Transfer Company which were disallowed were payable to the order of the Decatur Company, were indorsed by it, and were taken by the claimant before their maturity in

the regular course of business in payment of its claim for the purchase price of goods it had sold and delivered to the Decatur Company and of about $1,200 in cash. The possession of commercial paper regularly indorsed is evidence of title in the holder, and that the paper is free from all equities between the antecedent parties to it, and the burden is on those who assert defenses to it to prove them. Collins v. Gilbert, 94 U. S. 753, 754, 756, 24 L. Ed. 170; Brown v. Spofford, 95 U. S. 474, 478, 24 L. Ed. 508; Daniel on Negotiable Instruments, § 812; Code Supp. Iowa 1907, §§ 3060a24, 3060a25; Brown v. Wiley, 20 How. 442, 15 L. Ed. 965.

. What defenses has the trustee established? There is a statement in the brief of its counsel that W. A. Southard, the president of the Transfer Company, who signed the notes in its name, had no authority so to do, but no argument is presented in support of this suggestion. On the other hand, the record indubitably proves that Southard made all the notes and contracts and conducted all the business of the corporation for many months before these notes were signed, and no doubt remains that, by the acquiescence of the corporation in the course of business pursued, plenary power was granted to him to issue its commercial paper for all lawful purposes. Merchants' Bank v. State National Bank, 10 Wall. 604, 19 L. Ed. 1008.

Counsel contend that these notes are void because the capital stock of the Transfer Company was only $25,000, only $12,000 of it was issued, and the limit of its indebtedness was $8,000 under section 1611 of the Code of Iowa, while its actual indebtedness was known to the claimant to have been vastly in excess of this limit when it took the notes. Let these facts be conceded, nevertheless the Transfer Company issued and authorized the sale or exchange of these notes by its agent, the Decatur Company. Scherer & Co. paid full value for them to this agent. The moment the title to them was transferred to the claimant and its payment received, these notes became executed contracts on the part of the claimant. It had performed its part of the agreements. It had paid the price for the commercial paper. The Transfer Company had the power to make promissory notes of this character. Their execution was within the scope of its corporate powers. It was but an excessive exercise of them.

The statutes of Iowa in effect declared that the limit of the indebtedness of this corporation should be $8,000. But they did not provide that notes or contracts issued by the corporation which created an indebtedness beyond the limit thus prescribed should be void, and it is not the province of the courts to impose a penalty for the violation of a statute in which there is no moral turpitude or breach of public policy where the law fails to do so. In such a case the remedy for the violation is not the destruction of the contracts or of the property of those who have purchased them, but it is the ouster and dissolution of the corporation at the suit of the state. It is no defense for a private corporation against the enforcement of its commercial paper or other contracts, in reliance upon which a creditor has parted with value, that while their execution was within the general scope of its powers it involved an excessive exercise of one of them. Sioux

City Terminal R. & W. Co. v. Trust Co., 82 Fed. 124, 133, 134, 27 C. C. A. 73, 83, 84, and cases there cited; Sioux City Terminal R. & W. Co. v. Trust Co., 173 U. S. 99, 112, 19 Sup. Ct. 341, 43 L. Ed. 628; Garrett v. Burlington Plow Company, 70 Iowa, 697, 29 N. W. 395, 59 Am. Rep. 461; Warfield, Howell & Co. v. Marshall County Canning Co., 72 Iowa, 666, 672, 31 N. W. 467, 2 Am. St. Rep. 263; Beach v. Wakefield, 107 Iowa, 567, 76 N. W. 688, 694, 78 N. W. 197; Farmers' National Bank v. Sutton Mfg. Co., 52 Fed. 191, 195, 3 C. C. A. 1, 17 L. R. A. 595; Bird v. Daggett, 97 Mass. 494.

Another argument which is urged upon our consideration with persistent force is that the Decatur Company defrauded the Transfer Company of these notes and hence the claimant cannot enforce their collection. Let us see. Take the most vulnerable notes, those delivered to the Decatur Company to be substituted by it for original notes of the Transfer Company, or to be sold for the Transfer Company under the agreement that the Decatur Company should remit the proceeds to the maker of the notes. Concede that the Transfer Company never received anything for these notes, a fact which is by no means satisfactorily established, yet the testimony is undisputed that the Transfer Company signed the notes, that it delivered them to the Decatur Company, and that it authorized that company to discount them and to send the proceeds to it or to substitute them for its original notes. So far as the Decatur Company discounted the notes and received the proceeds in cash, it acted by the express authority of the Transfer Company, and, if it subsequently converted those proceeds to its own use, that fact constituted no defense to the notes, because the purchaser thereof from the authorized agent of the Transfer Company was not liable for that agent's disposition of the money which the Transfer Company had authorized it to receive on its account.

The Decatur Company, however, was not authorized to use these notes to pay its own debts, and it is said that its delivery of them to Scherer & Co. for that purpose was a fraud upon the Transfer Company which constitutes a defense to the paper. If so, the purchaser of the notes which took them in good faith in reliance upon their apparent validity and upon the Decatur Company's apparent ownership of them must suffer for this fraud, while the Transfer Company which made the notes, which knew they were without consideration, which created their false appearance of validity and the false appearance of their ownership by the Decatur Company, escapes the evil consequences of its participation in the fraud. This would be a reversal of the familiar and salutary rule that one who by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter rightfully acts on such a belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial. Paxson v. Brown, 61 Fed. 874, 882, 10 C. C. A. 135, 143; Union Pacific Ry. Co. v. United States, 67 Fed. 975, 979, 15 C. C. A. 123, 127; Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271,

293, 22 C. C. A. 171, 192, 34 L. R. A. 518; Given v. Times Republican Printing Co., 114 Fed. 92, 95, 52 C. C. A. 40, 43; Mechem on Agency, §§ 83, 84. The Transfer Company made these notes. It recited in the face of them that it had made them for value received. It made them payable to the order of, and it delivered them to, the Decatur Company. It intentionally clothed that company with the false appearance of an ownership it did not have, of notes which the Transfer Company had intentionally given a false appearance of having valuable considerations that never existed, and Scherer & Co., and the other claimants who bought such notes, were induced by these false representations to purchase them in payment of their accounts against the Decatur Company. If the Transfer Company had not produced these false appearances, the purchasers would not have bought the notes. If the Transfer Company is now permitted to deny that these appearances represented the truth, the purchasers will suffer the loss of the liability of the Transfer Company and of a dividend from its estate. The Transfer Company intentionally and with culpable negligence made and intrusted these deceitful representations and the power to use them to its agent, the Decatur Company, and if the latter abused that power the Transfer Company and its successor in interest, the trustee, are estopped from denying that its representations were true for the purpose of defeating the claims of the holders of these notes. When one of two parties must suffer loss from the fault of a third, he who wrongfully or with culpable negligence put it in the power of the third to cause the loss must bear it.

It is said that these notes were accommodation paper, that the issue of accommodation paper was beyond the power of the Transfer Company, and that for that reason the notes constitute no valid claim against its estate. The corporation had no power to issue accommodation paper, and this fact would have been a perfect defense to these notes in the hands of any holder who knew they were accommodation paper when he purchased them. But the corporation had power to issue negotiable paper for value. "When a corporation has power under any circumstances to issue negotiable securities, the bona fide holder has a right to presume that they were issued under the circumstances which give the requisite authority, and that they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper." City of Lexington v. Butler, 14 Wall. 282, 296; 20 L. Ed. 809. The Transfer Company intentionally gave these notes the false appearance of negotiable paper issued by it for value, and thereby induced the claimants to buy them. Where a corporation which has the power to issue negotiable paper puts forth accommodation paper beyond its power, it is estopped from denying that the latter was lawfully issued for value for the purpose of defeating the claim of a bona fide holder of such paper for value. Bank v. Dunn, 6 Pet. 51, 8 L. Ed. 316; In re Troy & Cohoes Shirt Co. (D. C.) 136 Fed. 420, 425, 430, 431; German Savings Bank v. Hanna, 124 Iowa, 374, 100 N. W. 57; Farmers' National Bank v. Sutton Mfg. Co., 52 Fed. 191, 3 C. C. A. 1, 17 L. R. A. 595; Martin v. Niagara Falls Paper Mfg. Co., 122 N. Y. 165, 25 N. E. 303; Holmes et al.

v. Willard, 125 N. Y. 75, 25 N. E. 1083, 11 L. R. A. 170; Tod v. Kentucky Union Land Co. (C. C.) 57 Fed. 47, 52; Morawetz on Private Corporations, § 597; Monument National Bank v. Globe Works, 101 Mass. 57, 3 Am. Rep. 322; Mechanics' Banking Ass'n v. New York & Saugerties White Lead Co., 35 N. Y. 505.

Some of these notes were taken by Scherer & Co. in payment of a past due debt of the Decatur Company, and to these the objection is interposed that the claimant paid no value for them. But one who takes commercial paper before maturity, in payment of or as collateral security for a debt of the seller, due or not due, is a purchaser for value in the ordinary course of business, and protected by the same estoppels as a purchaser for cash. Swift v. Tyson, 16 Pet. 1, 15, 21, 10 L. Ed. 865; Railroad Company v. National Bank, 102 U. S. 14, 22, 28, 26 L. Ed. 61; Robinson v. Lair, 31 Iowa, 9, 14; Code Supp. Iowa 1907, §§ 3060a25, 3060a26; Woodworth & Co. v. Carroll, 104 Minn. 65, 112 N. W. 1054; McMurray v. Moran, 134 U. S. 150, 158, 10 Sup. Ct. 427, 33 L. Ed. 814; American File Co. v. Garrett, 110 U. S. 288, 294, 4 Sup. Ct. 90, 28 L. Ed. 149; Hamilton v. Fowler, 99 Fed. 18, 22, 40 C. C. A. 47; Doe v. Northwestern Coal & Trans. Co. (C. C.) 78 Fed. 62, 68; Wood v. Seitzinger (C. C.) 2 Fed. 843, 844; In re Huddell, Fed. Cas. No. 6,825.

There is a statute of the state of Iowa to the effect that no holder of commercial paper procured by fraud upon the maker shall recover thereon a greater sum than he paid therefor with interest and costs. Ann. Code Iowa 1897, § 3070; Richards v. Monroe, 85 Iowa, 359, 52 N. W. 339, 39 Am. St. Rep. 301. It is contended that Scherer & Co. paid nothing for these notes, but the cash which it advanced, some $1,200, and that this should be the limit of its recovery. The answer is that the Transfer Company and the trustee of its estate are estopped by the inducing false representations of the former from claiming or proving against this claimant that this paper was procured by fraud, and, if this estoppel did not exist, the amount of the debt of the Decatur Company to the claimant, which was paid by these notes and the cash which the claimant advanced, substantially equal the face of the notes. The debt of the Decatur Company was paid for them as much as was the cash, and both may be recovered under the statute.

The objections to the claim of Scherer & Co. have now been considered under the concession that the notes which they held were originally without consideration, and our conclusion is that even if that fact were satisfactorily proved these objections cannot be sustained. The fraud in this case was not prepared, inspired, or effected by this claimant. It was the victim, not the perpetrator, of it. The Transfer Company furnished the false representations which accomplished it, and the Decatur Company, its agent, used them. Neither the Transfer Company, nor its creditors, nor the trustee can take advantage of the wrong of that company to deprive the most direct victims of it of their share in its estate. That company had no available defense to this claim when the petition in bankruptcy was filed, and the trustee and the other creditors have none now.

Decisions of state courts have been called to our attention and con-

832 168 FEDERAL REPORTER.

sidered which do not in all things accord with some of the declara-- tions of the commercial law upon which our conclusion rests. But these declarations are supported by controlling authority in this court, by the decisions of the Supreme Court which have been cited, and the duty is imposed upon the national courts to exercise their independent judgment in the determination of all questions of general jurisprudence, of commercial law, and of right under the Constitution and laws of the United States. Railroad Company v. National Bank, 102 U. S. 14, 30, 26 L. Ed. 61; Railroad Company v. Lockwood, 17 Wall. 357, 368, 21 L. Ed. 627; Myrick v. Railroad Co., 107 U. S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325; Carpenter v. Insurance Co., 16 Pet. 495, 511, 10 L. Ed. 1044; Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359; Smith v. Alabama, 124 U. S. 465, 478, 8 Sup. Ct. 564, 31 L. Ed. 508; Bucher v. Railroad Co., 125 U. S. 555, 583, 8 Sup. Ct. 974, 31 L. Ed. 795; Liverpool & G. W. Steam Co. v. Phenix Insurance Co., 129 U. S. 397, 443, 9 Sup. Ct. 469, 32 L. Ed. 788.

So far as our conclusion rests upon a construction of the statutes of Iowa, it is not inconsistent with the decisions of the Supreme Court of that state, and it is sustained by those cited above, and by the decision of the Supreme Court in Sioux City Terminal R. & W. Co. v. Trust Company, 173 U. S. 99, 19 Sup. Ct. 341, 43 L. Ed. 628.

The testimony regarding the disallowed claims of the eight other appellants in this case has been considered, and it brings those claims within the decision announced upon the claim of Scherer & Co. They are founded on promissory notes of the Transfer Company indorsed by the Decatur Company and purchased by the claimants before maturity in the regular course of business for debts of the Decatur Company paid thereby, or for cash, and they must be allowed.

The decree of the court below must accordingly be reversed, and this case must be remanded to the District Court with instructions to allow the claims of the appellants in controversy in this appeal upon the same basis as claims of other unsecured creditors are allowed, and it is so ordered.