CAMP et al. v. BONSAL et al.

(Circuit Court of Appeals, Fourth Circuit. March 7, 1913.)

No. 1,110.

1. COURTS (§ 276*)—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZEN-SHIP—DISTRICT OF SUIT.

The requirement that, where federal jurisdiction depends on diversity of citizenship, the suit shall be brought only in the district of the residence of either plaintiff or defendant, confers a privilege only on the defendant which he may waive.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. § 276.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. COURTS (§ 269*)—FEDERAL COURTS—JURISDICTION—RESIDENCE OF PARTIES—LIEN OR CLOUD ON REAL PROPERTY.

The Judicial Code (Act March 3, 1911, c. 231, § 57, 36 Stat. 1087 [U. S. Comp. St. Supp. 1911, p. 152]), provides that when in any suit commenced in any District Court of the United States to enforce any legal or equitable lien on or claim to, or to remove any incumbrance or lien or cloud on, the title to real or personal property within the district where such suit is brought one or more of the defendants therein shall not be an inhabitant or be found within the district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant to appear, plead, answer, or demur, which may be served on him wherever found, or by publication, etc. *Held*, that where complainant, thinking he was acting with defendant B. in the purchase of certain timber land, was in fact fraudulently induced by B. to make the purchase on false representations as to the value of the property, and that B. would take a one-twentieth interest and later increase his interest to one-eighth, whereupon complainant sued to set aside the transaction, divest himself of the title, and recover the purchase money, B.'s equity to call for a conveyance of a one-twentieth interest was not a cloud, but a perfect equity, and complainant's suit was therefore not within such section; and hence could not be maintained in a federal court on the ground of diversity of citizenship as against B. in a district in which he did not reside, over his objection.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*]

3. COURTS (§ 343*)—NECESSARY PARTIES—FEDERAL COURTS.

Rules applicable in state courts with reference to the joinder of necessary parties in equity are not binding on the federal courts, which courts, in the exercise of discretion, will require complainant to bring in every party in interest which he can, but, if the case can be completely decided as between the litigant parties, the circumstance that an interest ex-

ists in some other person whom the process of the court cannot reach will not prevent a decree on the merits as to the parties before the court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 915, 916, 919, 920; Dec. Dig. § 343.*]

4. COURTS (§ 343*)—FEDERAL COURTS—NECESSARY PARTIES—DISMISSAL FOR NONJOINDER.

A dismissal of a suit in equity in a federal court will not be granted for nonjoinder of a necessary party, unless no court could adjudicate directly on the rights in issue without the party's presence, the only indispensable party in the federal courts being the one having such an interest in the controversy or subject-matter that a final decree between the parties before the court cannot be made without affecting his interest or leaving the controversy in such a situation that its final determination might be inconsistent with equity and good conscience.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 915, 916, 919, 920; Dec. Dig. § 343.*]

5. COURTS (§ 343*)—FEDERAL COURTS—PARTIES.

Complainant, having confidence in B., who had previously acted as his agent, was fraudulently induced by him to purchase nineteen-twentieths of a tract of timber land which complainant had never seen, and which he purchased entirely on B.'s recommendation, paying $38,000; B. agreeing to pay $2,000 for the other one-twentieth, and to increase his interest thereafter to one-eighth. This he subsequently refused to do, complainant ascertaining that B.'s contribution had been settled by an allowance from the seller as a commission for making the sale. Complainant, on discovering that the timber on the land had been fraudulently overestimated, elected to rescind, and sued the seller and B. for rescission and to recover the consideration paid. *Held,* that B.'s interest in the land was not such as to make him a necessary party to the suit as between complainant and the seller; and hence complainant's inability to sue B. in a federal district in which suit was maintainable against the seller was not ground for dismissal of the suit as against the seller.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 915, 916, 919, 920; Dec. Dig. § 343.*]

Appeal from the District Court of the United States for the Eastern District of North Carolina; Henry G. Connor, Judge.

Suit by Clarence Camp and others, as executors of W. N. Camp, deceased, against W. R. Bonsal and another. From a decree dismissing the bill, complainants appeal. Affirmed as to defendant R. F. Brewer, and reversed as to defendant W. R. Bonsal.

T. D. Savage and W. L. Williams, both of Norfolk, Va. (Williams, Tunstall & Thom and Peatross & Savage, all of Norfolk, Va., on the brief), for appellants.

Thomas H. Willcox, of Norfolk, Va., and James H. Pou, of Raleigh, N. C., for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. W. N. Camp filed this bill. He was a citizen of Florida, and has since died. The appellants are his executors. It is admitted that, if he could maintain this suit, they can. He com-

plained that he had been fraudulently induced to purchase timber lands and timber rights. He seeks to rescind the purchase and to recover $38,000 he paid for them. It will tend to clearness if both he and his executors are referred to as the buyer. The bill named two respondents. One of them, W. R. Bonsal, is a citizen of North Carolina, and an inhabitant of the Eastern district of that state. He was the seller of the land and the rights of which the complainant was the buyer. He will be referred to as the seller. The other respondent was R. F. Brewer. He was a citizen of Tennessee. He negotiated the sale.

The bill says that prior to the purchase Brewer had been in the employ of the buyer. The latter had great confidence in his integrity and honesty. In 1905 he suggested to the buyer to buy a certain tract of land and standing timber in Robeson, Cumberland, and Scotland counties in North Carolina. These counties are all in the Eastern district of that state. The bill alleges that Brewer told the buyer that timber on the tract was large and fine; that there were some 50,000,000 or 60,000,000 of feet of it—certainly in no event less than 40,000,000. Brewer said that he greatly desired to buy the land and timber himself, but that at the time he could raise sufficient funds to pay for only a part of it. He urged the buyer to join him in the purchase, agreeing that he would take and pay for a one-twentieth, and would later increase his interest to one-eighth. The buyer authorized Brewer to negotiate for the property. Those negotiations resulted on November 16, 1906, in a purchase of the whole of such land and such timber rights for the sum of $40,000, of which the buyer paid $38,000. Brewer told the buyer that he had personally paid the remaining sum of $2,000. The buyer, who lived in Florida, had not visited the land prior to the purchase. He relied implicitly upon Brewer's statements. After the purchase he attempted to resell the property. Possible purchasers made unfavorable reports of the land. Brewer absolutely refused to pay for the additional interest necessary to bring up his holding to the one-eighth which he had at first said he would take. The buyer's suspicions were then aroused. He caused an independent examination of the land to be made. He found out that there was less than 20,000,000 feet of timber on the property, and that the lands and rights were not worth one-half the price the buyer paid for them. He made further investigation, the result of which may be summarized in the following charges made by the bill: The seller, shortly before the buyer paid him $38,000 for nineteen-twentieths of the land and rights, had himself bought all of them for less than $5,000. The seller knew that the buyer had great confidence and trust in Brewer, and would rely upon the representations of the latter. For the deliberate purpose of defrauding the buyer by selling him the land at a great, excessive, and exorbitant price, the seller employed Brewer to sell the land and rights to the buyer. The seller paid Brewer not less than $5,000 for making the sale. The seller knew that there was not 40,000,000 of feet of timber on the property. He also knew that Brewer told the buyer that there was. He also knew of the other representations made by Brewer and heretofore mentioned. The seller was aware that the buyer made the purchase solely because he

believed that what Brewer had told him was true, and would not have made it had he thought otherwise. The seller knew that the buyer thought Brewer was acting for him, and had no idea that he was in the employ of the seller. The bill charges that Brewer told the buyer that he was paying $2,000 to the seller, making, with the $38,-000 paid by the buyer, the full purchase price of $40,000, but in point of fact no such payment of $2,000 was ever made otherwise than by the seller making a deduction from the commission which he would otherwise have paid Brewer.

When the buyer found out the facts above set forth, he offered to reconvey the property to the seller, and demanded the return of the purchase price paid by him. In the bill the buyer again tenders himself ready to reconvey all his interest in the land to the seller. The bill charges that the seller absolutely refused to return the purchase money or to enter into any negotiations upon the subject. It alleged that Brewer claimed to own a one-twentieth undivided interest in the lands and rights, and that said claim was a cloud upon the title to them.

The bill says that immediately after the buyer discovered the real state of facts he instituted suit in the circuit court of Norfolk City, Va., against the seller to recover from him the purchase money; that he obtained a decree for the full amount of such purchase money, with interest thereon; that the seller thereupon appealed to the Supreme Court of Errors and Appeals of Virginia, which reversed the decree of the lower court upon the sole ground that Brewer had not been made a party to the suit. He was not joined therein because during the pendency of the suit he was a resident of Tennessee, and was not and could not be served with process in Virginia. As a result in June, 1911, the Virginia suit was finally dismissed.

The present bill was filed on the 27th of the same month. On the 8th of August, 1911, James H. Pou, Esq., as attorney for Brewer, made application to be allowed to enter a special appearance for the sole purpose of disputing the jurisdiction of the court over the latter. Leave so to do was given him. He thereupon moved to dismiss the bill as to Brewer because it was instituted in a district other than that of which either the plaintiff or the defendant was an inhabitant, and he also set up such defense by special plea. The learned judge below at first overruled the plea as not sufficient in law. He required Brewer to answer or demur. Brewer, still protesting that the court was without jurisdiction over him, demurred. He assigned such lack of jurisdiction as one of the grounds for his demurrer. Upon further consideration the court below came to the conclusion that the objection was well taken. The bill as to Brewer was accordingly dismissed.

[1] This suit is a controversy between citizens of different states. It is therefore one to which the judicial power of the United States may extend. The particular court in which the case was brought was created by statute, and may not exercise any jurisdiction except that which the statute gives it. The act of Congress provides that when the jurisdiction is founded, as it is here, solely on the fact that the action is between citizens of different states, the suit shall be brought only in the district of the residence of either the plaintiff or the de-

fendant. Neither the buyer nor Brewer was a resident of the Eastern District of North Carolina. It is true that this provision confers a privilege upon the defendant. He may waive it if he chooses. If the controversy is one between citizens of different states, he may consent to be sued in any district. Brewer, however, has never waived his objection to being sued in the Eastern District of North Carolina.

[2] There are some exceptions to the statutory limitation of jurisdiction above cited. One of these is that created by section 8, Act of March 3, 1875, c. 137, 18 Stat. 472 (U. S. Comp. St. 1901, p. 513) 4 Anno. Stat. 380, § 57; Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1087 [U. S. Comp. St. Supp. 1911, p. 152]).

Complainant contends that this suit is within the terms of that section. At first the learned judge below was of such opinion. Upon further reflection he came to the opposite conclusion. By its terms it is limited to suits to enforce any legal or equitable lien or claim to, or to remove any incumbrance or lien or cloud upon, the title to real or personal property within the district where the suit is brought. In the opinion below it is said:

"Assuming the allegations in the bill to be true, it is apparent that complainant is entitled to no such relief against Brewer. His purpose is to have a decree made rescinding the contract of purchase, divest himself of the legal title, and receive from Bonsal the purchase money. If he should succeed in his purpose, he would have no title to the land upon which Brewer's claim to a one-twentieth interest could be a cloud. The only decree which he could ask would be to revest Bonsal with the legal title. If this be done, and complainant recover the amount paid by him, nineteen-twentieths of the entire purchase money, the relation which Brewer would have to the title, revested in Bonsal, would in no manner concern complainant. If he should fail in his suit, he would hold the legal title in the same plight and estate as at present. Brewer's equity to call for a conveyance of one-twentieth interest would be, not a cloud, but a perfect equity, which in a proper proceeding a court of equity would enforce by an appropriate decree. It seems clear, therefore, that such relief as that suggested in any aspect of the case can be afforded against Brewer."

He refers to Jones v. Gould (C. C.) 141 Fed. 698, and to Nelson v. Husted (C. C.) 182 Fed. 921.

In the conclusion thus stated we concur. The bill as against Brewer was properly dismissed. If without his presence before the court the suit is still maintainable against the seller, the bill may be amended by striking out the allegations that his interest in the land and rights constitutes a cloud upon the title to them and by eliminating the prayer for relief as against him. The learned judge below was, however, of opinion that the Supreme Court of Errors and Appeals of Virginia was right in holding that Brewer was an indispensable party to the cause and that no decree could be made against the seller, unless Brewer was also before the court. The seller had on this ground demurred to the bill. His demurrer was sustained, and the bill finally dismissed. The buyer thereupon took his appeal.

[3] The discussion as to who are necessary and who are only proper parties to a suit in equity bulks large in chancery reports and textbooks. Some of the distinctions made are both fine and technical. It may be that some of the rules laid down in such authorities are still

of more or less binding force in the equity courts of some of the states. Nearly 90 years ago they were declared inapplicable to the courts of the United States. Elmendorf v. Taylor, 10 Wheat. 165, 6 L. Ed. 289. In that case it was contended that a tenant in common ought not to be permitted to sue in equity without making his cotenants parties to the suit. The court, speaking through the mouth of Chief Justice Marshall, said:

"This objection does not affect the jurisdiction, but addresses itself to the policy of the court. Courts of equity require that all the parties concerned in interest shall be brought before them that the matter in controversy may be finally settled. This equitable rule, however, is framed by the court itself and is subject to its discretion. * * * Being introduced by the court itself for the purposes of justice, (it) is susceptible of modification for the promotion of those purposes. * * * The rule which requires that all persons concerned in interest, however remotely, should be made parties to the suit, though applicable to most cases in the courts of the United States, is not applicable to all. In the exercise of its discretion the court will require the plaintiff to do all in his power to bring every person concerned in interest before the court. But, if the case may be completely decided as between the litigant parties, the circumstance that an interest exists in some other person whom the process of the court cannot reach, as if such party be a resident of some other state, ought not prevent a decree upon its merits. It would be a misapplication of the rule to dismiss the plaintiff's bill because he has not done that which the law will not enable him to do."

It does not follow that the objection that an indispensable party is absent can never be made in the United States courts in any case in which such party cannot be brought in without his consent which he will not give, or in any case in which the making him a party will oust the jurisdiction of the court. Such a defense can be successfully made and frequently is. Mallow v. Hinde, 12 Wheat. 193, 6 L. Ed. 599; California v. Southern Pacific Co., 157 U. S. 239, 14 Sup. Ct. 1138, 38 L. Ed. 702.

[4] When it is sustained, however, it is not for any technical reason, but upon the much broader ground that no court can adjudicate directly upon a person's rights without the party being actually or constructively before the court. Mallow v. Hinde, supra. The only absolutely indispensable party in the federal courts is one who has such an interest in the controversy or subject-matter of the controversy that a final decree between the parties before the court cannot be made without affecting his interests or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 82 Fed. 124, 27 C. C. A. 73; Donovan v. Campion, 85 Fed. 71, 29 C. C. A. 30.

It may tend to clearness if this rule be read in terms of the concrete case before us. So read, the buyer has no right to a final decree against the seller which will in a legal sense affect the interests of Brewer, because such a decree would pass upon Brewer's rights without his being before the court to defend them. Nor can the buyer ask for any decree against the seller which, if it does not also adjudicate the rights of Brewer against the seller, will or may work injustice to the latter. In inquiring whether legal injury will result either to the seller or to Brewer from any final decree which may be passed upon the case as

it now stands, we must assume the truth of all the well-pleaded allegations of fact found in the bill. All that the buyer wants from the seller is $38,000. He asks nothing from Brewer. Whether the seller is or is not required to pay such sum of money to the buyer is not in a legal sense any concern of Brewer. It is true that the bill says that Brewer, while in a relation of trust and confidence to the buyer, was an active party in a scheme by which the latter was defrauded. Before the buyer can obtain the relief he seeks he must prove his allegations. Such a decree as he asks will, if passed, necessarily imply that in the judgment of the court he has done so. In that sense Brewer will be affected by any such decree as that which the buyer demands. That is, however, not such an interest in the outcome of litigation as would make him an indispensable party to it. That alone might not even suffice to constitute him a proper party. Some men, when such charges are made against them, feel themselves so deeply concerned that they will seek the first possible opportunity to face their accuser. There are others who do not. The law does not compel any one so situated to do so, nor does it leave other men's rights dependent upon what course he sees fit to take in the matter. The interest which Brewer is supposed to have in the outcome of this litigation is of a more material sort. The buyer has no right to his $38,000, unless the contract is rescinded. It is contended that such rescission would or might be unjust to Brewer. If the contract be rescinded, the buyer will give the seller what the seller gave him. Now, what did the seller give the buyer? The legal title to all the land and rights, and an equitable title to an undivided nineteen-twentieths of it. The buyer can certainly return both this legal and this equitable title to the seller without in anywise affecting the rights or interests of Brewer. It, of course, must be conceded that in a court of equity one who has an equitable interest is an indispensable party to the same extent as he would be if his interests were legal. Harding v. Handy, 11 Wheat. 103, 6 L. Ed. 429. But it is no less certain that a tenant in common of the legal title may sue in equity with relation to his undivided interest without necessarily joining his cotenants. Elmendorf v. Taylor, supra; Cameron v. M'Roberts, 3 Wheat. 591, 4 L. Ed. 467. If the contract be rescinded, Brewer will have retained his equitable one-twentieth precisely as he has it now.

[5] It is contended that Brewer's equitable interest in the land is not necessarily limited to one-twentieth, but that he may be entitled, upon paying an additional $3,000, to increase his equitable holding to a one-eighth. This contention appeared to the Supreme Court of Errors and Appeals of Virginia to be sound. In spite of the sincere and unfeigned respect we have for that learned and able tribunal, we cannot concur in this view. Had the bill simply stated that Brewer had agreed to take and had taken an equitable one-twentieth, and had said nothing more, this particular objection could not have been made. Does it make any difference whether the bill was silent as to his contingent right to an eighth or said that he once had had such a right, but had renounced and extinguished it before suit brought? In either event, upon demurrer the allegations of the bill must be taken as true. If we are wrong, it would seem to follow that every one who had ever

had any interest in any property must be joined in every subsequent suit concerning it, for it would be as true in every such case as in this that the allegations of the plaintiff as to how that interest had been extinguished, or that it had been extinguished at all, might be false.

We are therefore of opinion that, if the buyer shall prove his charges, a final decree may be passed which will not affect any interests of Brewer. It remains to inquire whether such decree would leave the controversy in such a situation that its final determination might work injustice to the seller. It is urged that it will, or at least may, because such rescission as the buyer can now make will restore to the seller only nineteen-twentieths of the land and rights, and will therefore not be a complete rescission. Such contention assumes that the contract which is sought to be rescinded was a contract for the transfer of all the land and rights for $40,000 to the buyer and Brewer in a common interest. The transaction took that form. That was what the buyer at the time thought it was; but, if the allegations of the bill are true, that was what it was not. Instead of the buyer and Brewer being parties on the same side dealing with the seller on the other, the actual facts were that the seller and Brewer were joint conspirators in inducing the buyer to pay the seller $38,000 for nineteen-twentieths of the property.

A court of equity always tears the mask from fraud. It deals with controversies before it not in accordance with the form given to them by chicanery and deceit, but as they in fact were. It follows that the real contract, and all the contract that was actually made between the seller and the buyer, may be completely rescinded so that each of those parties will get back everything which passed from one to the other. With the rights, if any such there be, between the seller and Brewer, the buyer has no concern. He did not create such rights in any other sense than as an unconscious tool in the scheme which they had jointly devised for his undoing.

The objection to the jurisdiction of the court which we are now considering is that made by the seller. His complaint is that any decree which may be passed will work injustice to him, unless Brewer be before the court. It is the only objection to the jurisdiction which he is entitled to urge. He has no concern with any harm which may come to Brewer unless as a result he himself will or may be injured. It is for the court of its own motion to make sure that if it decrees it will not directly affect the interest of any one not before it.

If the allegations of the bill are true, we have already pointed out that there will be no difficulty in so framing the decree as to give complete relief to the buyer without affecting Brewer's rights. What we have said is sufficient to show that in our view the bill as to the seller should not have been dismissed. We may add that, if there were any difficulties in dealing separately with the interests of the seller and of Brewer, such a difficulty was not created by the buyer, but by the seller. One who wrongfully mixes his goods with those of another must stand the loss. Such case has some analogy to that at bar.

We have assumed that the seller really is, as he says, fearful that he will suffer injury if in the absence of Brewer the case be proceeded with as against him. If so, it must be because he feels that the interests of himself and of Brewer are or may become adverse. If his ap-

prehension is genuine, he would naturally be anxious to have Brewer before the court. He would avoid all entangling alliance with him. The record shows that he employed in the court below and at this bar the same counsel who had entered his special appearance for Brewer and had succeeded in securing the dismissal of the bill as against the latter. The exceptional ability, experience, and high standing of that counsel makes it certain that he would not appear in the same case for two parties whose interests were, or in his judgment might become, antagonistic. We have reached our conclusion independent of this circumstance and of anything which it may suggest.

Sound reasons of public policy sometimes require courts to think and decide in an artificial atmosphere. Judges may not always draw inferences which naturally suggest themselves to all other men. It may be that such reasons apply to this special phase of the case before us. We do not therefore base our conclusions in whole or in part upon it.

In all that we have said it must be remembered that we have assumed that what is charged in the bill is true merely because on demurrer we are bound to make such assumption. We know not what the facts may be shown to be when the case comes up for final hearing. The plaintiff may then fail to sustain every one of the serious charges of his bill. It is possible that all of them may be positively disproved. We have been dealing in this case not with the actual buyer or the actual Brewer, but with the buyer and the Brewer as the plaintiff has pictured them in his bill.

It follows from what has been said that the order of the court below sustaining the demurrer and dismissing the bill as to Bonsal must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.