**CHICAGO, M., ST. P. & P. R. CO. v. ADAMS COUNTY et al.**

No. 7122.

Circuit Court of Appeals, Ninth Circuit.

Aug. 31, 1934.

F. M. Dudley, of Seattle, Wash. (C. S. Jefferson, of Chicago, Ill., and O. G. Edwards and A. J. Laughon, both of Seattle, Wash., of counsel), for appellants and cross-appellees.

G. W. Hamilton and R. G. Sharpe, both of Olympia, Wash., for appellees and cross-appellants.

U. S. Webb, Atty. Gen., and H. H. Linney, Deputy Atty. Gen., amici curiæ.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

SAWTELLE, Circuit Judge.

Consolidated for trial in the court below, the present suits were brought by the appellant and cross-appellee for the purpose of having the court set aside the assessments of

the railroad's operating real properties in the state of Washington, as well as the taxes based thereon, for the years 1926 and 1927. The assessments were made by the state tax commission and were affirmed by the state board of equalization. .

The appellant alleges that the assessments were made arbitrarily, capriciously, and fraudulently, upon erroneous theories, and were grossly excessive, and that the taxes based thereon are consequently illegal and excessive. It is charged that the making of such assessments denied to the appellant and its predecessors in interest the equal protection of the laws, and that the enforcement of the taxes will deprive the appellant of its property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States.

Two suits were filed by the appellant or its predecessors—one involving the taxes for 1926, and the other dealing with the taxes for 1927.

In the first suit, twenty counties of the state of Washington, and in the second suit, nineteen counties of the same state, were named parties defendant. The counties, as such, were the sole defendants; no county officers or other individuals were joined.

The complaint in the suit involving the 1926 taxes was filed in March, 1927. At that time the railway properties belonged to the Chicago, Milwaukee & St. Paul Railway Company, but were in the custody of receivers appointed in actions brought for the foreclosure of mortgages on properties of that company, and for other purposes. In January, 1928, pursuant to decrees in the foreclosure suits, the properties were conveyed to the Chicago, Milwaukee, St. Paul & Pacific Railroad Company. In June of the same year the latter company was substituted for the receivers of the earlier company as complainant in the tax suit. The complaint in the suit involving the 1927 taxes was filed in March, 1928.

The complaints in these actions were filed prior to the dates when the taxes therein referred to became delinquent; and subsequently to the filing of the complaints, but before the taxes became delinquent, the taxes extended against the operating personal properties were paid in full, and one-half of those extended against the operating real properties were paid. The payments upon the real properties were made under protest, as to an alleged excess. As we have already stated, we are here concerned only with the assessments and taxes on the appellant's operating real properties. The proceedings as to these payments were set up by supplemental complaints.

The suit involving the 1926 taxes and that dealing with the taxes for 1927 were consolidated and referred to the same master. On March 29, 1930, the master filed his report. There had also been referred to him, in addition to the suits brought by the appellant, a similar action instituted by the Northern Pacific Railway Company and one brought on behalf of the Spokane, Portland & Seattle Railway Company; and the master included his conclusions and findings in all of those actions in a single report. Numerous exceptions to the master's report were filed.

At the same time that the present Milwaukee cases were argued, the similar actions by the Northern Pacific and the Spokane Company, already referred to, were heard. On July 9, 1932, the court below filed a single opinion in those various cases. Northern Pac. Ry. Co. v. Adams County, 1 F.Supp. 163. On September 7, 1932, findings of fact and conclusions of law were filed, conforming to the opinion; and, after the appellant had filed exceptions thereto, the final decree was entered, from which decree the present appeals have been taken. The appellees' exceptions to the court's findings and conclusions were filed on the day after the decree was entered.

The court's final decree set forth that the operating real properties of the appellant had been "arbitrarily, wrongfully and excessively assessed," and contained tables showing the balances of taxes due, as determined by the District Judge. The appellant was ordered to pay the respective appellees the balances listed in the decree. Upon the appellant's making the designated payment to each respective county, then, in the language of the decree, "such county *and its officers,* shall, and it and *they* are hereby required to, *cancel* upon the books of such county the valuation of the operating real properties of said Milwaukee Company as extended thereon, for the year or years for which such payment or payments may be made; and to *cancel* the taxes extended against or upon such operating real properties for said year, as the same now appear upon said books; and thereafter such county, *its officers and representatives,* shall forever *refrain* from asserting, or attempting to assert, any claim for or on account of any taxes against or upon such operating real properties, upon or under any tax levy, for the said year or years for which such payment shall have been made as aforesaid." (Italics our own.)

It will be seen that, though no county officers or representatives had been joined as parties defendant to either suit, the decree attempted to include such officers and representatives in both its mandatory and its inhibitory orders.

The appellees and cross-appellants contend that there is a fatal defect of parties defendant, in that the county treasurers have not been joined. It is urged that the county officers "were not only necessary but indispensable parties to these suits."

The appellant, on the other hand, replies that the appellees have waived all objections on this ground. Nevertheless, the appellant concedes "that if the county treasurers are *indispensable* parties, the counties cannot waive the requirements that they be joined as defendants; and the court will refuse relief upon its own motion regardless of the acts or agreements of the parties to the suit." That, as we shall presently see, is unquestionably the law.

Since we are confining our present inquiry solely to the question of whether or not the county treasurers are indispensable parties— as contradistinguished from "necessary," "proper," or "formal" parties—it will be unnecessary to examine the facts relied upon to establish the appellees' alleged waiver of objections as to defect of parties.

■ In the first place, it must be remembered that, on the question of indispensability of parties, a federal court of equity must be governed primarily by federal, rather than by state, rules.

In Equitable Trust Co. of New York v. Denney (C. C. A. 7) 24 F.(2d) 169, 170, the court said: "The peculiar and limited jurisdiction of the federal courts, affected as it is by the citizenship of the parties, has resulted in a well-recognized modification of the former rules in chancery practice classifying parties as proper or necessary."

Again, in Michigan Bell Telephone Co. v. Odell (D. C.) 45 F.(2d) 180, 182, the following language was used: "We agree with the master that it is fundamental that a state statute restricting the right to maintain suits in its courts is not applicable to or binding upon a federal equity court, and that no state procedure can affect a substantive federal right."

And in Lane v. Equitable Trust Co. of New York (C. C. A. 8) 262 F. 918, 926, certiorari denied, 252 U. S. 578, 40 S. Ct. 344, 64 L. Ed. 725: "The next point urged by appellant is that section 2859 of the Revised Statutes of Missouri of 1909 [Mo. St. Ann. § 3095, p. 1918] provides that a foreign corporation or individual trustee cannot foreclose a deed of trust covering property in that state without joining a resident trustee as a party plaintiff. That requirement of the statute of Missouri cannot control the bringing of a suit in a United States court in that state by a foreign corporation. [Many cases cited.]" See, also, Rogers v. Penobscot Mining Co. (C. C. A. 8) 154 F. 606, 615, 616; O'Neil v. Wolcott Mining Co. (C. C. A. 8) 174 F. 527, 535, 536, 27 L. R. A. (N. S.) 200; Camp v. Bonsal (C. C. A. 4) 203 F. 913, 917, 918; Jennings v. United States (C. C. A. 8) 264 F. 399, 404; Fienup v. Kleinman (C. C. A. 8) 5 F.(2d) 137, 140; Franz v. Buder (C. C. A. 8) 11 F.(2d) 854, 856, 857.

■■ An early and able discussion of the entire question of indispensable parties is to be found in the following oft-quoted passage from the opinion of Mr. Justice Curtis in Shields v. Barrow, 17 How. (58 U. S.) 130, 139, 15 L. Ed. 158. After quoting from Russell v. Clarke's Executors, 7 Cranch, 98, 3 L. Ed. 271, the learned jurist continued: "The court here points out three classes of parties to a bill of equity. They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

The definition of the term "indispensable party," and the reason for the application of the rule as to such party in the federal courts, was well stated in the leading case of Sioux City Terminal R. & W. Co. v. Trust Co. of N. A. (C. C. A. 8) 82 F. 124, 126, affirmed in 173 U. S. 99, 19 S. Ct. 341, 43 L. Ed. 628: "The general rule in chancery is that all those whose presence is necessary to a determination of the entire controversy must be, and all those who have no interest in the litigation between the immediate parties, but who have an interest in the subject-matter of

the litigation, which may be conveniently settled therein, may be, made parties to it. The former are termed the necessary, and the latter the proper, parties to the suit. The limitation of the jurisdiction of the federal courts by the citizenship of the parties, and the inability of those courts to bring in parties beyond their jurisdiction by publication, has resulted in a modification of this rule, and a practical division of the possible parties to suits in equity in those courts into indispensable parties and proper parties. An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree between the parties before the court cannot be made without affecting his interests, or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the parties before the court, so that it will not be immediately affected by a decree which does complete justice between them, is a proper party. Every indispensable party must be brought into court, or the suit will be dismissed."

The subject of indispensable or "essential" parties is further elaborated in Minnesota v. Northern Securities Co., 184 U. S. 199, 235, 22 S. Ct. 308, 322, 46 L. Ed. 499:

" * * * We think that the suit is defective for want of essential parties whose rights would be vitally affected by the relief sought therein.

"The general rule in equity is that all persons materially interested, *either legally or beneficially*, in the subject-matter of a suit, are to be made parties to it, so that there may be a complete decree, which shall bind them all. By this means the court is enabled to make a complete decree between the parties to prevent future litigation, by taking away the necessity of a multiplicity of suits, and to make it perfectly certain that no injustice is done, either to the parties before it, or to others who are interested in the subject-matter, by a decree which might otherwise be granted upon a partial view only of the real merits. When all the parties are before the court, the whole case may be seen; but it may not, where all the conflicting interests are not brought out upon the pleadings by the original parties thereto. Story, Eq. Pl. § 72.

"The established practice of courts of equity to dismiss the plaintiff's bill if it appears that to grant the relief prayed for would injuriously affect persons materially interested in the subject-matter who are not made

parties to the suit is founded upon clear reasons, and may be enforced by the court, sua sponte, though not raised by the pleadings or suggested by the counsel. [Cases cited.]" (Italics our own.)

See, also, Gregory v. Stetson, 133 U. S. 579, 586, 587, 10 S. Ct. 422, 33 L. Ed. 792; California v. Southern Pacific Co., 157 U. S. 229, 249–251, 257, 15 S. Ct. 591, 39 L. Ed. 683; Garzot v. Rios De Rubio, 209 U. S. 283, 297, 298, 28 S. Ct. 548, 52 L. Ed. 794; Commonwealth Trust Co. v. Smith, 266 U. S. 152, 159, 45 S. Ct. 26, 69 L. Ed. 219; Webster v. Fall, 266 U. S. 507, 510, 45 S. Ct. 148, 69 L. Ed. 411; Arkansas Southeastern R. Co. v. Union Sawmill Co. (C. C. A. 5) 154 F. 304, 311; Rogers v. Penobscot Mining Co., supra, at pages 615–617 of 154 F.; Lawrence v. Southern Pac. Co. (C. C.) 165 F. 241, 243.

But the appellant insists that the question "is as to whether the county treasurers have rights and interests in the taxes which may be injuriously affected by the decree entered in the district court," and that the county treasurer "has no beneficial interest in the amount of the collections." We believe that the appellant is here in error; for counsel seem to overlook the fact that, under the rule announced in the Northern Securities Case, quoted supra, an indispensable party may have merely a *legal*, as contradistinguished from a *beneficial*, interest. And, assuredly, a county treasurer has a legal interest in the question of whether or not a court will order him to refrain from performing a duty apparently prescribed by statute.

Nor is it necessary that the officer's rights be "injuriously affected" by the court's decree. In Davis v. Henry (C. C. A. 6) 266 F. 261, 266, the court said: "The test of indispensability is not whether the decree is bound to injuriously affect the rights of the absent party; it is enough that such absence may 'leave the controversy in such a situation that the final determination may be inconsistent with equity and good conscience.' "

At this juncture it will be helpful to consider briefly the tax-collecting machinery in force in the state of Washington, in so far as real estate is concerned. Section 113 of chapter 130, p. 299 of Laws, Extraordinary Session, 1925, Washington, provides in part: "On the first business day after the expiration of the eleven months after the taxes charged against any real property are delinquent, the board of county commissioners shall determine whether it will be for the best interest of the county to carry or further carry the de-

linquent taxes on the books of the county or to permit certificates of delinquency for the same to be sold to any person, and should it be deemed advisable to permit the sale of certificates of delinquency they shall pass a resolution to that effect * * * and on the first day of the month next following, the treasurer shall have the right, and it shall be his duty, upon demand and payment of the taxes and interest, to make out and issue a certificate or certificates of delinquency against such property. * * * "

Section 117 of the same chapter provides that: "After the expiration of five years from the date of delinquency, when any property remains on the tax rolls for which no certificate of delinquency has been issued, the county treasurer shall proceed to issue certificates of delinquency on said property to the county, and shall file said certificates when completed with the clerk of the court, and the treasurer shall thereupon, with such legal assistance as the county commissioners shall provide in counties having a population of thirty thousand or more, and with the assistance of the county prosecuting attorney in counties having a population of less than thirty thousand, proceed to foreclose in the name of the county, the tax liens embraced in such certificates, and the same proceedings shall be had as when held by an individual. * * * "

It will be seen from the foregoing that the active agents in collecting taxes are the boards of county commissioners and the county treasurers. Furthermore, the county treasurers are repeatedly and specifically designated, by the Washington statutes, as *the collectors of state, county, and other taxes.* Thus, section 83 of the chapter above referred to provides: "The county treasurer shall be the receiver and collector of all taxes extended upon the tax rolls of the county, whether levied for state, county, school, bridge, road, municipal or other purposes, and also of all fines, forfeitures or penalties received by any person or officer for the use of his county."

Again, in section 84 we find: " * * * And from and after the taking effect of this act the county treasurer shall be the sole collector of all delinquent taxes and all other taxes due and collectible on the tax lists of the county."

Similar provisions, emphasizing the treasurer's *tax-collecting* duties with even greater particularity, are to be found in Remington's Compiled Statutes of Washington, 1922. Thus, the county treasurer is ex-officio treasurer for the pest districts in his county; and the taxes for such districts are to "be collected and accounted for the same as other taxes are." Section 2805. The county treasurers shall collect the taxes for diking and drainage districts (section 4382); school districts (section 4867); irrigation districts (section 7453); port districts (section 9693); public waterway districts (section 9811); state, county, school, bridge, road, municipal, and other taxes (section 11252); taxes for cities of the first class (section 11321) and cities of the second, third, and fourth classes (sections 11330 and 11334); townships (section 11454); and road districts (section 11482).

Such an impressive array of statutes clearly indicates that the Legislature of Washington intended that the county treasurers should be indissolubly linked with the tax-collecting machinery of the state. That being so, we are convinced that in a suit such as this, in which tax collecting is sought to be restrained, the county treasurers are indispensable parties.

In Skagit County v. Northern Pac. Ry. Co. (C. C. A.) 61 F.(2d) 638, 643, 644, 86 A. L. R. 1012, decided after the final decree in the instant case had been filed in the court below, we held that, in the state of Washington, "the county treasurer is charged by the law with the duty of collecting these taxes," and that "he is a necessary party defendant." In that case, the county treasurer, the sheriff, and the prosecuting attorney were enjoined by a temporary injunction from attempting to collect a tax. They were not parties to the litigation, but appeared specially before the entry of the interlocutory injunction and objected to being included therein. This objection was overruled, and they were so included. They then joined in the general assignment of errors on the merits and joined in the petition for appeal on the merits and in the argument of the merits on appeal. We concluded our opinion with the following language: "As they [the county officers] have no interest in the outcome of the case other than the desire to perform their duty under the law of the state, and have fully presented their contentions of law and fact on their appeal, they have had their day in court on the question of the issuance of the temporary injunction. The county treasurer should, however, be made a formal party by appropriate amendment in the trial court. We treat him as a party for the purpose of disposing of his appeal from the interlocutory order."

In the instant case, however, the county treasurers have not appeared during any

stage of the proceedings, either specially or generally. They have not "fully presented their contentions of law and fact," either in the court below or on this appeal. They have not "had their day in court." There is therefore in this case much greater reason for holding that a decree without the joinder of the county treasurers as parties defendant leaves "the controversy in such a situation that its final determination may be inconsistent with equity and good conscience."

The views that we are here expressing are in accordance with suggestions repeatedly made by the Supreme Court of the state of Washington.

In State ex rel. Northern Pacific R. Co. v. State Board, 140 Wash. 243, 247, 248 P. 793, 794, the court held that it was powerless to decide a tax case on the merits, since it could not direct a recall of the certificate sent down by the state board of equalization and substitute its own order in lieu thereof, or could not direct the trial court to do so. Furthermore, the state tribunal pointed out that it could not order, or direct the trial court to order, the board of equalization to reconvene and amend its certificate, since prior to the time the writ of certiorari was sued out against the board from the superior court the matter had passed beyond the control and jurisdiction of the board, and there was no statutory authority or other rule of law empowering the court to cause the board to reassume jurisdiction.

But, in closing its opinion, the Supreme Court of Washington pointed out the correct procedure that was still open to the complaining railway company—a procedure that we are now holding should have been followed in the instant case: "The conclusion we have reached does not leave the relator without remedy. It can, when the tax is made a lien upon its property, test its validity by a suit in equity *against the officers seeking to collect the tax*, in which suit it may bring forward any matter showing that the tax is unjust or arbitrary, even though the inquiry may involve the action of the equalization board." (Italics our own.)

In Byram v. Thurston County, 141 Wash. 28, 35, 251 P. 103, 106, 252 P. 943, the same tribunal quoted the foregoing paragraph from its decision in the Northern Pacific Case, supra, with the following comment of unequivocal approval: "That ruling was made advisedly and we think justly."

Similar views have been expressed in other jurisdictions. The decision in the case of Bode v. New England Investment Co., 1 N. D. 121, 45 N. W. 197, 199, 200, discloses that the Supreme Court of North Dakota had before it statutes similar to those governing the duties of county treasurers in the state of Washington. We are quoting at some length from that decision, since we believe it admirably states the rule and its implications: "It seems clear that, inasmuch as the county treasurer was not a party to the former action, * * * [in which a city and a county were the only defendants] if that action had culminated in a judgment for the plaintiff adjudging that the tax of 1885 on plaintiff's lands be canceled and set aside, and further directing that Ramsey county be enjoined from selling the plaintiff's lands for such taxes, such judgment would have been inoperative, and wholly ineffectual to accomplish either or any purpose sought to be accomplished by such judgment. Under the revenue laws of the territory, county treasurers, after receiving the tax duplicate, and while collecting the tax by distraint of personal property or sale of real estate, act under statutes which regulate and prescribe their duties, and which are mandatory upon them as tax collectors. While in the discharge of their duties as tax collectors, county treasurers act independently, and are beyond any interference or supervisory control by the county commissioners. The treasurer and his official sureties are responsible for the collection of the tax which appears upon the duly-authenticated tax duplicate, and if such tax is not voluntarily paid the payment must be enforced in the manner directed by the statute. It follows from these provisions of the revenue laws that the county of Ramsey would have been powerless, even if directed so to do by the judgment of the district court, to have prevented its treasurer from selling the plaintiff's lands for the taxes in question. The terms of the statute requiring the treasurer to sell lands for delinquent taxes are imperative, and no legal power exists, except in a competent court, to interfere with or prevent the sale. Nor could a court enjoin such sale without first obtaining jurisdiction of the person of the officer who is required to make the sale, viz., the county treasurer. It is equally clear that, had a decree been made in the former action directing the cancellation and annulment of the tax proceedings and levies of 1885, the same would have been idle and inoperative. The records of the tax assessments and levies in question were contained in record books in the official custody of certain city and county officials, who were strangers to the former action. Such officials were bound by strict legal enactments to safely keep such records;

and, in the performance of such duty, they might lawfully resist any attempt which might be made by the defendants in the former action to cancel, annul, or in any manner efface the evidence of the tax levies and assessments in question. It was quite unnecessary to enjoin the defendants in the former action from selling plaintiff's lands for the taxes in question, as they did not, nor did either of them, have the power to do so. Our conclusion upon this feature of the case is that necessary parties defendant were omitted in the former action, and that the defendants in the present action are not in privity with the defendants in the former action. In this conclusion we do not decide that the city and county would not have been proper parties in the former action. On the contrary, we think that the two corporations as such, would have been proper parties thereto if they had been joined as co-defendants with the necessary parties who were omitted."

It is true that the statutes of Washington give to the boards of county commissioners greater powers in the collection of taxes than seem to have been given to such boards in North Dakota at the time when the Bode decision, supra, was handed down. It is precisely this share in tax collecting which, in our view, renders it indispensable that the boards of county commissioners as well as the county treasurers should be joined as parties defendant in the instant suit. See, also, Rogers v. Bass & Harbour Co., 47 Okl. 786, 150 P. 706, 708.

Finally, there is another and conclusive reason why the lower court's decree, in its present form, cannot stand. Though no county officers were made parties defendant to the suit, the decree, as we have seen, undertakes to order such officers to cancel upon the books of their respective counties "the valuation of the operating real properties of said Milwaukee Company as extended thereon," etc., and also attempts to enjoin such officers forever from "asserting, or attempting to assert, any claim for or on account of any taxes," etc. In other words, the court below endeavored to control, both affirmatively and negatively, the actions of officers who were strangers to the record.

That cannot be done. The rule was plainly laid down in Scott v. Donald, 165 U. S. 107, 117, 17 S. Ct. 262, 265, 41 L. Ed. 648: "The decree is also objectionable because it enjoins persons not parties to the suit. This is not a case where the defendants named represent those not named. Nor is there alleged any conspiracy between the parties defendant and other unknown parties. The acts complained of are tortious, and do not grow out of any common action or agreement between constables and sheriffs of the state of South Carolina. We have, indeed, a right to presume that such officers, though not named in this suit, will, when advised that certain provisions of the act in question have been pronounced unconstitutional by the court to which the constitution of the United States refers such questions, voluntarily refrain from enforcing such provisions; but we do not think it comports with well-settled principles of equity procedure to include them in an injunction in a suit in which they were not heard or represented, or to subject them to penalties for contempt in disregarding such an injunction. [Case cited.]"

Accordingly, the decree is reversed and the cause is remanded, with instructions that the appellant be given the opportunity, if it so desires, to amend its bills by joining as parties defendant the boards of commissioners and the treasurers of the present defendant counties, the appellees herein; and that further proceedings be taken not inconsistent with the views herein expressed.